**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 18-80660-Civ-BRANNON**

JOEL PAULOT, GARRY JEAN,
FENEL JH PETIT-HOMME,
ANGELIA SISTRUNK and
KENNETH PINNOCK, individually,
and on behalf of all other similarly
situated individuals,

      Plaintiffs,

vs.

THE SCHOOL BOARD OF
PALM BEACH COUNTY,
FLORIDA,

      Defendant.

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL CERTIFICATION
PURSUANT TO SECTION 216(b) OF THE FLSA, APPROVAL
OF THE PARTIES' SETTLEMENT AGREEMENT, AND DISMISSAL WITH
PREJUDICE RESERVING JURISDICTION TO ENFORCE THE TERMS OF
SETTLEMENT AND PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**

## I.    <u>INTRODUCTION</u>

In addition to the five Named Plaintiffs, 623 Opt-In Plaintiffs filed Consent to Join

Forms in response to receiving Court-authorized notice of the Parties' proposed settlement of

this case. *See* Declaration of Settlement Administrator Simpluris by Cassandra Cita ("Cita

Decl."), filed contemporaneously herewith, ¶ 12. The 628 Plaintiffs represent 77 percent of

the 820 Potential Opt-In Plaintiffs who were provided notice of the settlement. *See id.*, ¶ 8,

12. This opt-in rate greatly exceeds the norm for FLSA collective actions. *See* Section

V.B.4., *infra*.  These Plaintiffs seek to receive a share of a settlement fund which the School Board of Palm Beach County has established to compensate them for their claims of allegedly being denied overtime wages.  Only one of the Opt-In Plaintiffs, Tanisha Shirley, lodged an objection to the settlement and Ms. Shirley also filed a Consent to Join Form agreeing to be bound by the settlement.  *See* Shirley Objection filed as Exhibit E to Cita Decl., and Shirley Consent to Join Form filed as D.E. 88-9, at 17.

At this time, Plaintiffs seek final approval of the Parties' settlement, which was arrived at after significant motion practice regarding the merits of the claims at issue and extensive negotiations between skilled counsel for both sides.  In light of the fact that liability is strongly contested and based on the foregoing memorandum in support, the Plaintiffs hereby seek final approval of the settlement, final certification of the collective action, approval of the service payments for the Named Plaintiffs, approval of the attorneys' fees and costs for Plaintiffs' attorneys, and request that the Court dismiss the case with prejudice while retaining jurisdiction to enforce the terms of the settlement.  Defendant has no objection to the relief requested in this motion and supports the settlement.  A draft proposed order is attached hereto as Exhibit 1.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

On May 18, 2018, Named Plaintiffs filed the above-captioned collective action against Defendant, on behalf of themselves and other similarly situated bus drivers, alleging that throughout their employment, Defendant did not properly pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  D.E. 1.  All of the Plaintiffs were employed by the Palm Beach County School Board as Bus Drivers and earned

attendance incentive payments ("Merit Payments") sometime between May 18, 2016 and January 24, 2019 (the "Relevant Time Period") and worked overtime hours during the period in which the Merit Payments were earned.  Defendant denies Plaintiffs' claims, and, since the filing of this case, the litigation has been active and adversarial, as the Court's prior schedule would have had this case set for trial in April 2019, with no extensions permitted.  D.E. 73. After the Complaint was filed, Defendant moved to dismiss the Complaint for failure to state a claim for relief under the FLSA three times, D.E. 9, 25, 54, which Plaintiffs opposed, D.E. 37, 62.  Plaintiffs also filed amended complaints to resolve the purported deficiencies raised by the Defendant.  D.E. 11, 42.  In its last filed motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"), D.E. 54, Defendant argued that "Plaintiffs' complaint should be dismissed with *prejudice* because the relief Plaintiffs seek is either Overtime Gap Time, a theory of recovery that's been rejected by the majority of reviewing courts as not cognizable under the FLSA or otherwise asserts a claim that is not a cognizable claim under the FLSA." D.E. 54.  Defendant also argued that Plaintiffs' claim for "straight time and overtime compensation is akin to a request for gap time compensation" and "is not a cognizable claim under the FLSA."  *Id*. at 3-4 relying on *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) ("So long as an employee is being paid the minimum wage or more, [the] FLSA does not provide recourse for unpaid hours below the 40–hour threshold, even if the employee also works overtime hours the same week.").

Plaintiffs filed their opposition to Defendant's motion to dismiss the SAC, making arguments to the contrary, and filed a motion for leave to file a Third Amended Complaint (D.E. 63) to clarify that even though Plaintiffs disagreed with Defendant's analysis of the

viability of their straight-time claim during overtime weeks, regardless of the outcome of the Court's decision as to that issue, Defendant also failed to pay overtime on the Merit Payments earned during overtime weeks worked—which Plaintiffs contend is a clear violation of the FLSA.[1]  Both Defendant's motion to dismiss the SAC and Plaintiffs' motion for leave to file a Third Amended Complaint were fully briefed, pending and unresolved until this Court denied the motions without *prejudice* and entered an Omnibus Order Temporarily Staying Case pending this anticipated resolution. *See* D.E. 82.

At the center of this case is Defendant's pay plan for School Bus Drivers that pursuant to a Collective Bargaining Agreement spreads regular pay to School Bus Drivers over 22-pay periods equally over the school calendar year (so that School Bus Drivers receive paychecks during students' Christmas break and the like) and pays additional amounts as a Merit Payment (for perfect attendance and good driving records), as well as other remuneration (including overtime compensation).  *See* D.E. 25 at 3 (explaining Defendant's pay plan for School Bus Drivers).  While some overtime compensation is paid, Plaintiffs alleged they were not paid all the straight-time and overtime compensation due to them in each workweek by operation of Defendant's pay plan.  *See* D.E. 37.  As discussed above, Defendant denied Plaintiffs' allegations in full and defended this case by asserting it paid a substantial amount of overtime to School Bus Drivers with nothing more due (even for Merit Payments) under the mandates of the FLSA.  *See* D.E. 25 at 4 (claiming "[e]ach of the Plaintiffs have made thousands of dollars in overtime pay on top of their respective salaries

---

[1]  While the Plaintiffs' asserted that the SAC alleges a failure to pay overtime that sufficiently encompasses this claim, Plaintiffs sought to file a Third Amended Complaint to enhance the factual allegations related to this claim.

and they have been paid in accordance with the mandates of the FLSA for all of the hours they worked").

During the course of discovery, extensive payroll records, timekeeping records, and policy documents related to Defendant's payment methods and FLSA compliance were produced to Plaintiffs.  Detailed Court interrogatories with an accounting of the claims were exchanged.  Furthermore, Plaintiffs deposed Defendant's payroll manager who provided significant insight regarding Defendant's method of payment, including the method for calculating overtime payments, which were not readily discernable from the payroll records.

Thereafter, over a period of three months, comprising of in-person settlement discussions, numerous telephonic conferences, detailed settlement-privileged presentations of the factual and legal claims and defenses by each side, as well as the production and evaluation of data and information for the settlement class, the parties reached an arms-length negotiated Settlement Agreement, which was fully executed by the Plaintiffs and the School Board of Palm Beach County following a public meeting on January 23, 2019.

On January 31, 2019, the Court granted Plaintiffs' motion for preliminary approval of the settlement and conditionally certified the settlement collective action. D.E. 87.  Pursuant to the Court's preliminary approval order, after updating the mailing addresses received from Defendant, Court-approved notice was mailed and emailed in English and Creole on February 15, 2019 to 820 Potential Opt-Plaintiffs.  *See* Cita Decl., ¶ 5-8.  Notices were remailed to any forwarding addresses received from the Post Office, and for those without forwarding addresses, the Settlement Administrator attempted to find a forwarding address using Accurint, a research tool owned by Lexis-Nexis, and provided an additional notice to

any new found address.  *Id.* at ¶ 10.  On March 11, 2019, the Settlement Administrator mailed and emailed a reminder postcard to 384 Potential Opt-In Plaintiffs who had not returned a Consent to Join Form as of that date.  *Id.* at ¶ 9.

In response to the notice mailing, 623 Potential Opt-In Plaintiffs joined the five Named Plaintiffs in filing Consent to Join Forms.  *Id.* at ¶ 12.  The filing of the 623 Opt-In Plaintiffs along with the five Named Plaintiffs represent 77 percent of the 820 potential members of the certified collective action.  *Id.* ¶ 5 and 12.

Throughout the notice and claim-filing period, Plaintiffs' counsel and the Settlement Administrator responded to Potential Opt-in Plaintiffs who had questions regarding the proposed settlement.  *See Id,* ¶ 11; Supplemental Declaration of Sam J. Smith (Smith Supp. Decl."), filed contemporaneously herewith, ¶ 8.   Only one objection was filed with the Settlement Administrator.  *See* Cita Decl. ¶ 13.   The lone objector, Tanisha Shirley, also filed a Consent to Join Form agreeing to be bound by the settlement.  D.E. 88-9, at 17.  Ms. Shirley's objection is addressed in Section V.B.4, *infra.*

With the approval of this Court, the parties' Settlement Agreement will resolve this case and the FLSA overtime claims that were brought in this action for the Named Plaintiffs and the Opt-in Plaintiffs who submitted Consent to Join Forms consenting to participate in the settlement.  Plaintiffs' counsel believe the Settlement Agreement is fair, adequate and reasonable; particularly in light of the substantial risks involved in continued litigation. D.E. 84, Smith Decl., ¶ 20.

III.    <u>**SUMMARY OF SETTLEMENT TERMS**</u>

The Settlement Agreement provides that Defendant will pay a gross settlement amount of $361,103.24 ("Gross Settlement Fund").[2]  *See* D.E. 84-1, Settlement Agreement, Section IV.B.  The Gross Settlement Fund is inclusive of payments for all Named Plaintiffs and Opt-in Plaintiffs, settlement administration fees, and service payments and attorneys' fees and costs approved by the Court.  *Id*.  In addition to this amount, Defendant will pay its share of employer taxes on the back wages portion of the settlement. *Id*. at Section IV.B.2.

Settlement payments to Plaintiffs are based upon a formula that credited Potential Opt-in Plaintiffs with $20.93 for every occurrence in which they earned a Merit Payment in a month in which they also worked any overtime hours throughout the Relevant Time Period.  D.E. 84, Smith Decl., ¶ 12. This amount was determined by an analysis of time and payroll records and by determining on average the overtime due for Merit Payments plus an additional amount of consideration for liquidated damages.  *Id*.  In addition, Plaintiffs are to receive $50.00 for release of other FLSA claims that could have been brought in the case.  *Id*.

Through this settlement, Defendant has also agreed to a modification of the paystub for School Bus Drivers along with a notice to all current School Bus Drivers it employs providing an explanation of its methodology for calculating overtime pay.  *See* D.E. 84-1, Section VIII.  Specifically, Defendant agreed that no later than February 22, 2019 it would implement and rollout a revised version of the paystub for School Bus Drivers to include: (1) the employee's annual compensation to be paid for the school year; (2) the number of duty

---

[2] Defendant fully funded the Gross Settlement Fund on February 14, 2019.  Cita Decl., ¶ 14. Any amounts that are not claimed by Plaintiffs or paid or approved by the Court as attorneys' fees and costs will be refunded to Defendant.

days the employee is contracted to work for the school year; (3) the number of pay periods over which the employee will be paid for the year; and (4) the scheduled hours the employee is assigned to work for the week, which corresponds to the employee's base weekly compensation. *Id.* Furthermore, Defendant agreed to issue a notice explaining the foregoing additional fields and its method of calculating overtime in plain language to its current School Bus Drivers. *Id.* As agreed, on or about January 30, 2019, Defendant rolled out the revised paystubs and on February 22, 2019 provided the notice explaining the methodology used to calculate overtime payments. *See* Smith Supp. Decl., at ¶ 6.

Defendant has also agreed to a modest service payment of $1,500 to each of the five Named Plaintiffs for their role in representing the Potential Opt-in Plaintiffs, as well as settlement administration expenses up to $27,000, and attorneys' fees and costs of $115,000. D.E. 84-1, Sections IV.A.1 and C.1-2.

In exchange for these settlement terms, the Named Plaintiffs and Qualified Claimants, by submitting a Consent to Join Form, have agreed to dismiss this case with *prejudice* and release their FLSA claims against Defendant that could have been brought in the case through January 24, 2019. *Id.*, Section V.

## IV.    CERTIFICATION OF THE COLLECTIVE ACTION PURSUANT TO SECTION 216(b) OF THE FLSA

Pursuant to the Court's preliminary approval Order, D.E. 87, on February 15, 2019, notice was mailed and emailed to, and a collective action was conditionally certified, pursuant to 29 U.S.C. § 216(b) to include:

> School Bus Drivers who were employed by Defendant and received an attendance incentive payment ("Merit Payment") anytime between May 18, 2016 to January 24, 2019 (the "Relevant Time Period") and worked overtime

8

> during the period preceding the Merit Payment during which the Merit
> Payment was earned.

During the ensuing notice period, the response was uniformly in support of the settlement with only one objection being received by an Opt-In Plaintiff Tanisha Shirley, who also joined the case and agreed to the settlement provisions.  A total of 623 Opt-In Plaintiffs have joined the original five Named Plaintiffs representing 77 percent of the potential members of the collective action.  No evidence contradicting the conditional certification of the case as a collective action has been submitted.  Accordingly, it is now appropriate for the Court to enter a final order certifying the case as a collective action for settlement purposes.

## V.   THE PARTIES SETTLEMENT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS

### A.   The Settlement Meets the Requirements Set Forth in *Lynn's Food Stores, Inc.*

The Plaintiffs seek Court approval of their settlement because, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context."  *Id.* at 1354.  This is because the employees are "likely to be represented by an attorney who can protect their rights under the statute."  *Id.*  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit]

allow[s] the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing the settlement, this Court will find that the settlement is fair and should be approved. Specifically, the settlement resolves a *bona fide* dispute between the parties with respect to whether the employees at issue are entitled to overtime compensation under the FLSA and the amount of compensation due. The Plaintiffs faced significant factual and legal obstacles which posed the risk of an unsuccessful outcome if this case were to proceed to trial. Further, Plaintiffs were represented by experienced counsel, who together have litigated and resolved more than 60 FLSA collective and class actions (*see* D.E. 84, Smith Decl., ¶¶ 4, 5); and who, in the "adversarial context of a lawsuit" negotiated for the Plaintiffs a "reasonable compromise of disputed issues." *Id.* Being an arms-length resolution of a *bona fide* dispute, the settlement enjoys a presumption that the settlement is appropriate.

**B.     The Settlement Agreement Was Reached By Arms-Length Negotiations.**

The parties' settlement is the result of hard-fought adversarial, arm's length negotiations that took place over several months. *See* D.E. 84, Smith Decl., ¶ 9. It was negotiated at arm's-length by experienced counsel free from fraud or collusion. *Id.* Its adversarial nature is evidenced by the discovery and litigation activities, which included the exchange of thousands of pages of documents, extensive payroll and timekeeping data, and pleadings arguing the factual and legal merits and defenses to the claims. A "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir.1995) (Citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). In evaluating

whether the proposed settlement represents such a compromise, this Court "is entitled to rely upon the judgment of experienced counsel" in its evaluation of the merits of a class action settlement. *Cotton,* 559 F.2d at 1330. Plaintiffs' counsel consider the settlement to constitute a compromise of significant benefit especially when weighed against the uncertain outcome and risk of continued litigation, and the expense and delay which would result from prosecuting this action against Defendant through trial and appeal. D.E. 84, Smith Decl., ¶ 10. Furthermore, the settlement terms represent a successful resolution particularly in light of Defendant's ardent position that the Plaintiffs could not assert a cognizable claim under the FLSA; and that even if they could, no damages would be due for unpaid overtime because of Defendant's position that it paid for any and all overtime due. *See Id*., ¶ 20; D.E. 54 at 1, 3-5.

     **C.**    **The Settlement Is a Fair, Reasonable, and Adequate Resolution of
           *Bona Fide* Disputed Issues.**

     Defendant has repeatedly asserted that it has paid Plaintiffs all the overtime compensation due to Plaintiffs under the FLSA. Thus, there exists a *bona fide* dispute as to whether the law requires, as Plaintiffs have argued, that all straight-time pay must be paid in an overtime week under the FLSA before overtime pay is deemed paid, whether Defendant failed to do this with its payment plan for School Bus Drivers, and whether any overtime remains to be due in addition to the overtime payments already made. D.E. 54. Plaintiffs would have faced significant obstacles and risked an unsuccessful outcome if this case were to continue in litigation and to trial as Defendant has argued in three motions to dismiss that Plaintiffs fail to state a cognizable claim for relief under the FLSA. *See* D.E. 9, 25, 54. In its latest motion to dismiss, Defendant moved to have the case dismissed *with prejudice*. D.E. 54. If the case were tried, the Court could possibly find that Plaintiffs are due no overtime at all

under various defenses available to Defendant.  If the Court was persuaded by Defendant's arguments, or its defenses were successful, such a finding would have rendered Plaintiffs with no relief whatsoever.   The risks inherent in this case strongly supported settlement at this stage of litigation.

In addition to meeting the *Lynn's Food* requirements that the settlement occur in the context of an adversarial lawsuit and resolve issues that are in dispute, the settlement here will also be found to be fair, adequate and reasonable using the standard articulated for approving the settlements of Rule 23 class actions.[3]  In *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984), the Eleventh Circuit suggested six factors for use in determining whether a Rule 23 settlement is fair, adequate, and reasonable.  These factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*  As demonstrated herein, when evaluated under the *Bennett* factors, this Court will find that the Parties' settlement is fair, adequate, and reasonable.

---

[3] The Eleventh Circuit has not required that collective action approvals under Section 216(b) of the FLSA meet the Rule 23 settlement approval factors in order for district courts to approve the settlement of collective actions under the FLSA.  The approval of Rule 23 class actions is designed to protect absent class members from the resolution of their claims without their approval.  Unlike Rule 23 settlements, collective action settlements under Section 216(b) are only binding on those potential opt-in plaintiffs who consent to join the action.  In any event, the settlement here meets the applicable Rule 23 settlement approval factors.

###### 1.    The Likelihood of Success at Trial

There exists a *bona fide* dispute as to whether Defendant has paid Plaintiffs all the overtime due under the FLSA, or whether, as Plaintiffs have argued, overtime remains due in addition to the overtime payments already made.  D.E. 54.  Plaintiffs would have faced significant obstacles and risked an unsuccessful outcome if this case were to continue in litigation and to trial as Defendant has argued in three motions to dismiss that Plaintiffs fail to state a cognizable claim for relief under the FLSA.  *See* D.E. 9, 25, 54.

In sum, the Plaintiffs faced factual and legal issues at trial which would make the likelihood of success in the face of dispositive motions and trial uncertain.  The risks inherent in this case strongly supported settlement at this stage of litigation.

###### 2.    The Settlement Falls Within The Range of Recovery Such That This Court Should Find It Is Fair, Adequate and Reasonable

The second and third *Bennett* factors, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable.  *See Behrens v. Wometco Enter., Inc*., 118 F.R.D. 534, 541 (S.D. Fla. 1988). The "[c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality."  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322-1323 (S.D. Fla. 2005).  Moreover, "the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Id.*; *see*, *e.g.*, *Bennett*, 737 F.2d at 986; *Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

This settlement resolves complex FLSA overtime claims for the 628 Plaintiffs who joined this action.  It was derived from an extensive review of payroll and timekeeping

records and was evaluated on the basis of detailed models of the damages that could be recovered.    The monetary settlement amount was reached by calculating the average amount of overtime due on Merit Payments during the Relevant Time Period.  Defendant agreed to increase this calculated amount by paying an additional amount as liquidated damages and by paying $50.00 in back pay and liquidated damages for release of other possible overtime claims.  Plaintiffs' counsel estimates that the Plaintiffs recovered more than 100 percent of the back pay and liquidated damages that could have been recovered for Defendants' failure to pay overtime compensation on the Merit Payments paid to Plaintiffs and that Plaintiffs recovered approximately 7.5 percent of the damages that could have been recovered for failure to timely pay overtime during Defendant's regular pay plan for School Bus Drivers that, pursuant to a collective bargaining agreement, spreads regular pay to School Bus Drivers in equal amounts over 22-pay periods over the school calendar year (so that School Bus Drivers receive paychecks during students' Christmas break and the like).  Smith Supp. Decl., ¶ 4.  The claim for regular overtime pay was significantly discounted based on case law briefed by Defendants in their motion to dismiss these claims, *see* D.E. 54, at 1, 3-5.

In addition to the amount that was negotiated for back wages and liquidated damages for Qualified Claimants, the settlement includes up to $27,000 in claims administration fees, $7,500 for service payments, and $115,000 in attorneys' fees and costs for a total Gross Settlement Fund of $361,103.24.  The average settlement payment made available to Potential Opt-In Plaintiffs in this case is $255.93 and to up $552.20.  D.E. 84, Smith Decl., ¶ 12.  This settlement took into account Defendant's asserted defenses to this case that no

overtime was due, and credited Plaintiffs' claim that overtime compensation was unpaid for periods when Merit Payments were earned and overtime hours worked.  *Id.*, ¶ 20 (*see* D.E. 54 at 1, 3-5).  The settlement also provides non-monetary relief to Plaintiffs and other School Bus Drivers that outside of settlement would not have been possible because injunctive relief is not available under the FLSA.  D.E. 84, Smith Decl., ¶ 19.  Defendant has agreed as part of the settlement to revise its paystubs and provide detailed explanations to School Bus Drivers assisting them to understand how their overtime is calculated and paid—an issue that motivated this litigation in the first instance.  *Id.*, ¶ 12.  Based upon their extensive experience in wage and hour collective and class actions, *see id.*, ¶¶ 4-5, Plaintiffs' counsel believes the Settlement Agreement is fair, reasonable, and adequate and should be approved after a fairness hearing is held, *id.*, ¶ 20.  It bears all the indicia of fairness warranting final approval as Plaintiffs have been represented by experienced counsel who in the "adversarial context of a lawsuit" engaged in serious, informed, arms-length negotiations of a *bona fide* dispute under the Act.  *See Id.*; *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54; *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299 (E.D.N.Y. 2015).

Of course, if Defendants were successful in proving their affirmative defenses, the result could have been no recovery at all, and the Plaintiffs may have had to pay Court costs.  Based on the extensive  risk factors and the damage modeling performed, Plaintiffs' counsel are confident that the settlement is fair, adequate, and reasonable and, recommend approval of the settlement.  D.E. 84, Smith Decl., ¶ 20.

### 3.    The Complexity, Expense and Duration of Litigation

This complex collective action was resolved only after extensive litigation, research and analysis and negotiations. The Parties fully briefed the factual and legal issues surrounding Defendants' 22-payment pay plan.  Counsel for the Parties spent an enormous amount of time and effort advocating legal theories and modeling the potential damages at issue in this case.  Smith Supp. Decl. ¶ 3.  The Parties exchanged extensive documents, damage calculations, compensation information, and engaged in detailed evaluation of Defendants' compensation practices for School Bus Drivers.  *Id.*  The settlement was the result of hard-fought adversarial litigation and arm's length negotiations that took place over more than eight months.  Further litigation would increase the expenses of this litigation and would not likely increase the potential of recovery for the Plaintiffs.  *Id.*

### 4.    The Substance and Amount of Opposition to the Settlement

As directed by the Court, the Settlement Administrator provided notice to the Potential Opt-in Plaintiffs in the form approved by the Court on January 31, 2019.  Cita Decl., at ¶ 5-8.  The notice invited Potential Opt-In Plaintiffs to lodge any objections to the settlement with the Settlement Administrator.  Only one objection was received by Tanisha Shirley, but Ms. Shirley also filed a Claim Form and agreed to accept the settlement if approved by the Court.  *Id.,* ¶ 13 and Exhibit E (Shirley Objection); D.E. 88-8, at 17 (Shirley CTJ).  Ms. Shirley raises three issues in her objection.

First, Ms. Shirley asserts that the notice did not explain to her how the settlement damages were calculated.  Ms. Shirley's objection on this ground should be overruled.  On the first page of the notice, Potential Opt-In Plaintiffs were informed of the amount of their

16

settlement and told that "[t]his amount was determined by crediting you with $20.93 for every Merit Payment you earned in a month that you also worked any overtime hours during the Relevant Liability Period," which is defined in the notice as May 18, 2016 to January 24, 2019. Exhibit A to Cita Decl., Notice at page 1. The notice further provided, "You will also receive an additional $50.00 as additional consideration for your release of all overtime claims that could have been brought in the case." *Id.*

Second, Ms. Shirley objects to her settlement being paid as 50 percent back wages being reported on a W-2 form and 50 percent being reported on a Form 1099.  The basis for this portion of her objection is that she believed a payment under a Form 1099 is being made as a payment to an independent contractor.  However, the payment at issue here is a payment of liquidated damages, which is properly reported on a 1099 Form.  Cita Decl., ¶ 14; *Obando v. SBC Food Service, Inc.,* Case No. 6:18-cv-856-Orl-41TBS, 2019 WL 1093446, *3 (M.D. Fla. Feb. 5, 2019)  ("Normally, the plaintiff in an FLSA settlement receives a W-2 for wages and a [Form] 1099 for the liquidated damages paid pursuant to the agreement.").  Because liquidated damages are properly reported to the IRS using a Form 1099, this aspect of Ms. Shirley's objection should be overruled.

Third, Ms. Shirley asserts that the overtime she earned during the period May 2016 to January 2019 should have been paid at $21.00 per hour, which would have exceeded her settlement award total of $238.32.  Plaintiffs' counsel reviewed numerous payroll records of Defendant and has determined that the overtime rate used by Defendant exceeded one and one-half of their regular rate.  For example, in Ms. Shirley's case, she was paid at an overtime rate equal or exceeding her regular rate times 1.5 for all workweeks that she worked

overtime during the Relevant Time Period and was always paid over $21.00 per hour. *See*

Smith Supp. Decl., ¶ 5.  Because Ms. Shirley was paid more than $21 per hour for her

overtime hours, this aspect of her objection also should be overruled.

Finally, because none of Ms. Shirley's objections have merit and she has agreed to be

bound by the settlement in this case, she should be allowed to participate in the settlement

and recover her settlement share.  In fact, the notice provided to potential Opt-In Plaintiffs

informed them that "[i]f the Court approves the settlement over your objection, you will

receive your share of the settlement funds if you timely submit a claim form."  Exhibit A to

Cita Decl., Notice at page 2.

Futhermore, 623 Opt-In Plaintiffs and the five Name Plaintiffs filed Consent to Join

Forms for an opt-in percentage of 77 percent.  Cita Decl., at ¶ 12.   Charlotte S. Alexander,

the Deputy Director of the National Institute for Teaching Ethics and Professionalism and a

Post Graduate Research Fellow at Harvard Law School, published a law review article after

conducting an extensive study of FLSA collective actions, entitled "*Would An Opt In*

*Requirement Fix The Class Action Settlement? Evidence From The Fair Labor Standards*

*Act,*" pp. 466-67 & Figure 10 at pp. 489-91, 80:2 MISS. L.J. 443 (Winter 2010) ("Alexander

Study").  In Ms. Alexander's study, she gathered data on the opt-in rates in 38 FLSA

collective actions.  The plaintiff opt-in rates in these cases ranged from 0% to 48%, with a

median of 15%.  *See id.*  Thirty of the 38 cases had opt-in rates below 20%.  *Id.*  Another

analysis of FLSA opt-in rates in federal courts around the country, cited by Ms. Alexander

calculated the average opt-in rate to be 15.71%.  *Id.* at p. 468 (Citang Andrew C. Brunsden,

*Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in Federal Courts*, 29

BERKELEY J. EMP. & LAB. L. 269, 292 94 (2008)).[4]  The opt-in rate in this case was exceptionally high as 77 percent of the Potential Opt-in Plaintiffs have joined this action. This strong opt-in rate along with the fact that only one objection was lodged to the settlement supports final approval of the Settlement Agreement.

### 5.   The Stage Of Proceedings At Which The Settlement Was Achieved

The Parties reached settlement after hard-fought adversarial litigation and arm's length negotiations that took place over more than eight months.  The Parties were only able to reach this settlement after fully litigating three motions to dismiss, the taking of a deposition of Defendant's payroll manager, and exchanging voluminous payroll documents, and time records.  The Parties exchanged extensive damage calculations and compensation information, and engaged in detailed evaluation of Defendant's compensation practices for bus drivers and the school board's defense that it had paid all overtime compensation that was due to the School Bus Drivers.  Smith Supp. Decl., ¶ 3.  The Parties were unable to reach a settlement in September 2018 even after attending a face-to-face settlement meeting.  The Parties continued to work hard to resolve this case and finally reached agreement in January 2019 after months of settlement negotiations and extensive damage calculations.

In short, all relevant factors support a finding that the settlement represents a fair, adequate, and reasonable resolution of a *bona fide* dispute.

---

[4] According to an experienced wage and hour class action lawyer specializing in defense: "[while estimates of the average opt-in rate for an FLSA collective action vary wildly, most fall in the range of 10-20%, with virtually no estimates higher than 30 percent. *In Through the Out Door:  Third Circuit Says FLSA Collective Actions Not Incompatible With Rule 23 State Law Class Actions,* Todd Dawson, April 2, 2012, http://www.employmentclassactionreport.com/flsa/, Bakerlaw.com.

**D.      Distribution Will Be Equitable.**

The settlement distribution amounts are based upon an equitable formula that will

treat all Named Plaintiffs and Opt-In Plaintiffs in the same manner.  D.E. 84, Smith Decl., ¶

12.

**E.      Modest Service Payments Should be Approved for the Named Plaintiffs
         Who Helped Achieve This Favorable Settlement**

During the claims-filing period, all Potential Opt-in Plaintiffs received notice that the

Named Plaintiffs who brought this case and who helped prepare the complaints filed in this

case, and participated in discovery and settlement negotiations, would seek to receive modest

service payments under the terms of the proposed settlement of $1,500 per Plaintiff.  *See*

Exhibit A to Cita Decl., Notice at page 1 and D.E. 84, Smith Decl., ¶ 13.  These payments

recognize the dedication these individuals demonstrated to this litigation and the extent of

their efforts in assisting with the investigation, discovery including completing Court

interrogatories, preparing for negotiation of the claims, consulting with Plaintiffs' counsel to

determine a fair settlement fund, and other contributions that they made for their benefit and

the benefit of Potential Opt-in Plaintiffs.  D.E. 84, Smith Decl., ¶ 13.  No objections were

filed that objected to the payment of these service payments and the service payments are in

addition to the amounts Plaintiffs and Opt-In Plaintiffs will receive for their back pay and

liquidated damage awards.  "Courts routinely approve incentive awards to compensate

named plaintiffs for the services they provided and the risks they incurred during the course

of the class action litigation."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga.

2001) (*quoting In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997))

(approving $303,000 payment to each class representative plaintiff in employment case

where potential class members on average received $38,000). The modest service payments sought here are appropriate and reasonable, and consistent with awards made by other courts. *See e.g. North Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662 (M.D. Fla. 2011) (awarding $5,000 in incentive awards to the named class representatives); *Holman*, 778 F. Supp. 2d at 1315, 1319 ($29,500 in service awards approved); *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149 (S.D. Fla. 2010) (preliminarily approving $10,000 incentive award for lead plaintiff); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 in service awards to the three representative plaintiffs). Moreover, notwithstanding the reasonableness of the requested service payments, the parties' Settlement Agreement is not contingent on the approval of the payment of this amount. Instead, the Named Plaintiffs have agreed to accept the enhancement award the Court deems appropriate.

### F. Plaintiffs' Counsel Should Be Awarded $115,000 for Attorneys' Fees, Costs, and Expenses

The settlement provides for Plaintiffs' counsel to receive a reasonable amount of attorneys' fees, expenses, and costs of $115,000 from the settlement fund. *See* D.E. 84, Smith Decl., at ¶ 14. The Parties negotiated this amount separately after an amount had been agreed to for the resolution of the underlying claims of the Plaintiffs and Potential Opt-In Plaintiffs. Smith Supp. Decl., ¶ 8. Plaintiffs' counsel now seek to be awarded this amount to compensate them for the attorneys' fees, costs and expenses they have incurred representing the Plaintiffs. *Id.*

The $115,000 from the Gross Fund is reasonable in light of the fact that a settlement was obtained in spite of Defendant's vigorous defenses, including without limitation its defense that it had paid bus drivers all overtime compensation due under the FLSA and because

Plaintiffs' counsel negotiated the amount of fees, expenses, and costs after the amount to be paid to the Plaintiffs had been negotiated.[5]   Smith Supp. Decl., ¶ 8.  In addition, Plaintiffs' counsel's Lodestar fees, costs, and expenses exceed $200,000.  *Id.*   Finally, after Court approval of the settlement, Plaintiffs' counsel will continue to provide legal advice to Plaintiffs regarding the terms of the settlement and will facilitate the execution of the settlement including supervising the Settlement Administrator in administering the settlement. *Id.* Plaintiffs' counsel vigorously pursued claims on behalf of all bus drivers in the face of Defendant's strong opposition to the payment of any overtime compensation to bus drivers who were paid equal regular pay amounts for each pay period during their 22 pay period work year and overtime compensation at rates that exceeded one and one-half of their regular rate. *Id.*  Pursuing these claims required Plaintiffs' counsel to locate and interview bus drivers,

---

[5]  *See, e.g., Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *7 n.4 (S.D. Ala. Feb. 14, 2015) (persuasive district court authority has deemed scrutiny of the reasonableness of plaintiff's agreed-upon attorney's fees to be unnecessary in an FLSA settlement where the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, except in circumstances where the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney")(citations and internal quotation marks omitted); *Bonetti v. Embarq Management Co.,* 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009)(deeming scrutiny of  reasonableness of attorney's fee payment in FLSA settlement unnecessary unless "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his  attorney"); *Wing v. Plan B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (declining to assess reasonableness of attorney's fee payment in FLSA settlement where "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel"); *Gutierrez v. Coco Baleadas Corp.*, 2018 WL 6573131, at *1-2 (S.D. Fla. Aug. 30, 2018)("[w]hen, as here, the attorneys' fees are negotiated separately and after settlement of the Plaintiffs' wage claims, Courts generally approve the settlement as Plaintiff's compromise of his claim could [not] have influenced any amount received by his counsel).

conduct extensive research regarding cases impacting the determination of the regular rate and overtime compensation under the FLSA, engage in extensive discovery, litigate three motions to dismiss, and negotiate a favorable class settlement. *Id.* Plaintiffs' counsel prepared a comprehensive damage model that was persuasive in establishing an estimate of the damages that could be recovered. *Id.* In addition, Plaintiffs' counsel drafted the settlement agreement, class notice, and consent to join forms, prepared a motion for preliminary approval, consulted with numerous Plaintiffs regarding the settlement of their claims, and prepared this final approval motion. *Id.* Throughout the notice and claim-filing period, Plaintiffs' counsel and the Settlement Administrator have responded to Potential Opt-In Plaintiffs' who had questions regarding the proposed settlement. *Id.* Furthermore, Plaintiffs' counsel will continue to incur fees and costs in facilitating this collective settlement, including work with the settlement claims administrator, responding to questions from Potential Opt-in Plaintiffs, preparing the final settlement papers and attending the final approval hearing without any additional compensation for their hours worked. *Id.*

This case settled after more than eight months of litigation and negotiations, including but not limited to, the exchange of voluminous discovery and numerous settlement negotiations. *Id.* ¶ 3, 8. Plaintiffs and Opt-In Plaintiffs have benefited and will continue to benefit by these efforts, and it is appropriate that Plaintiffs' counsel be compensated for performing these services.

Finally, the notice provided to Potential Opt-in Plaintiffs explained that Plaintiffs' counsel would seek to recover $115,000 from the settlement fund as compensation for their attorneys' fees and costs. No Potential Opt-In Plaintiff objected to the amount of fees and

costs sought by Plaintiffs' counsel, the fees and costs were negotiated separately after the underlying claims of the Plaintiffs were negotiated and the fees and costs are reasonable and represent a significant reduction on the fees and costs incurred by Plaintiffs' counsel.

### Conclusion

In sum, the Plaintiffs submit this settlement as a fair and reasonable resolution of the disputed issues and that its entry will "secure the just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. 1. Accordingly, the Plaintiffs urge this Court to enter the proposed order attached as Exhibit 1 hereto, approving the settlement, finally certifying the collective action for settlement purposes, approving service payments for the Named Plaintiffs, approving Plaintiffs' counsel's request for attorneys' fees and costs, and dismissing the case with prejudice and retaining jurisdiction to enforce the terms of the Parties' settlement.

Dated:  May 3, 2019                           Respectfully submitted,


                                              */s/Sam J. Smith*
                                              Sam J. Smith
                                              Florida Bar No. 818593
                                              Loren B. Donnell
                                              Florida Bar No. 013429
                                              BURR & SMITH, LLP
                                              111 2nd Ave. N.E., Suite 1100
                                              St. Petersburg, FL  33701
                                              (813) 253-2010
                                              ssmith@burrandsmithlaw.com
                                              ldonnell@burrandsmithlaw.com


                                              Mark J. Berkowitz, Esq.
                                              Fla. Bar No. 369391
                                              MARK J. BERKOWITZ, P.A.
                                              One Ten Tower

110 S.E. 6th St., Suite 1700
Ft. Lauderdale, FL  33316
(954) 527-0570
labor@markjberkowitz.com

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of May 2019 the foregoing Plaintiffs' Unopposed

Motion for Final Certification Pursuant to Section 216(b) of the FLSA, Approval of the

Parties' Settlement Agreement, and Dismissal of the Collective Action With Prejudice

Reserving Jurisdiction to Enforce the Terms of Settlement and Plaintiffs' Memorandum of

Law in Support was filed through the ECF system, and will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing and paper copies will

be sent to those indicated as non-registered participants.

/s/ *Sam J. Smith*
Sam J. Smith

25

## SERVICE LIST

Lisa M. Kohring, Esq.
Sean Fahey, Esq.
The School Board of Palm
Beach County, Florida
3320 Forest Hill Blvd, C-331
West Palm Beach, FL 33416-9239
Telephone: (561) 434-8750
Facsimile: (561) 434-8105
lisa.kohring@palmbeachschools.org
sean.fahey@palmbeachschools.org
ana.jordan@palmbeachschools.org
tish.pickens@palmbeachschools.org

Attorneys for Defendant

Mark J. Berkowitz, Esq.
Mark J. Berkowitz, P.A.
One Ten Tower
110 S.E. 6th St., Suite 1700
Ft. Lauderdale, FL  33316
(954) 527-0570 telephone
(954) 281-5881 facsimile
labor@markjberkowitz.com

Attorney for Plaintiffs

Tanisha Bennett Shirley
1120 W. 2nd St.
Riviera Beach, FL  33404-7628