# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 18-80660-cv-BRANNON

JOEL PAULOT, GARRY JEAN,
FENEL JH PETIT-HOMME,
ANGELIA SISTRUNK and
KENNETH PINNOCK, individually,
and on behalf of all other similarly
situated individuals,

   Plaintiffs,

vs.

THE SCHOOL BOARD OF
PALM BEACH COUNTY,
FLORIDA,

   Defendant.

_____/

## PROPOSED ORDER

   This matter is before the Court pursuant to Plaintiffs' unopposed motion for an order: (1) finally certifying the collective action under 29 U.S.C. § 216(b) for purposes of settlement;  (2) approving the terms of the settlement; (3) approving the Service Payments for the Named Plaintiffs; (4) approving the attorneys' fees and costs to be paid to Plaintiffs' counsel; (5) approving the amounts to be paid to the Settlement Administrator; and (6) dismissing this case with *prejudice*, while retaining jurisdiction to enforce the terms of the settlement.

## I.  BACKGROUND

   On May 18, 2018, Named Plaintiffs Joel Paulot, Garry Jean, Fenel JH Petit-Homme, Angelia Sistrunk, and Kenneth Pinnock ("Named Plaintiffs") filed the above-captioned collective action against Defendant, on behalf of themselves and other similarly situated bus

drivers, alleging that throughout their employment, Defendant did not properly pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  D.E. 1.  All of the Plaintiffs were employed by the Palm Beach County School Board as Bus Drivers and earned attendance incentive payments ("Merit Payments") sometime between May 18, 2016 and January 24, 2019 (the "Relevant Time Period") and worked overtime hours during the period in which the Merit Payments were earned.  Defendant denies Plaintiffs' claims, and, since the filing of this case, the litigation has been active and adversarial, as the Court's prior schedule would have had this case set for trial in April 2019, with no extensions permitted.  D.E. 73.  After the Complaint was filed, Defendant moved to dismiss the Complaint for failure to state a claim for relief under the FLSA three times, D.E. 9, 25, 54, which Plaintiffs opposed, D.E. 37, 62. Plaintiffs also filed amended complaints to resolve the purported deficiencies raised by the Defendant.  D.E. 11, 42.

At the center of this case is Defendant's pay plan for School Bus Drivers that pursuant to a Collective Bargaining Agreement spreads regular pay to School Bus Drivers over 22-pay periods equally over the school calendar year (so that School Bus Drivers receive paychecks during students' Christmas break and the like) and pays additional amounts as a Merit Payment (for perfect attendance and good driving records), as well as other remuneration (including overtime compensation).  *See* D.E. 25 at 3 (explaining Defendant's pay plan for School Bus Drivers).  While some overtime compensation is paid, Plaintiffs alleged they were not paid all the straight-time and overtime compensation due to them by operation of Defendant's pay plan. *See* D.E. 37.  As discussed above, Defendant denied Plaintiffs' allegations in full and defended this case by asserting it paid a substantial amount of overtime to School Bus Drivers with nothing more due (even for Merit Payments) under the mandates of the FLSA.  *See* D.E. 25 at 4

(claiming "[e]ach of the Plaintiffs have made thousands of dollars in overtime pay on top of their respective salaries and they have been paid in accordance with the mandates of the FLSA for all of the hours they worked").

During the course of discovery, extensive payroll records, timekeeping records, and policy documents related to Defendant's payment methods and FLSA compliance were produced to Plaintiffs.  D.E. 83, at 6.  Detailed Court interrogatories with an accounting of the claims were exchanged.  Furthermore, Plaintiffs deposed Defendant's payroll manager who testified regarding Defendant's method for calculating overtime payments, which Plaintiffs contend did not compensate Plaintiffs for all straight-time wages during overtime weeks. *Id.*

Thereafter, over a period of three months, comprising of in-person settlement discussions, numerous telephonic conferences, detailed settlement-privileged presentations of the factual and legal claims and defenses by each side, as well as the production and evaluation of data and information for the settlement class, the parties reached an arms-length negotiated Settlement Agreement, which was fully executed by the Plaintiffs and the School Board of Palm Beach County following a public meeting on January 23, 2019.  *Id.*

On January 31, 2019, the Court granted Plaintiffs' motion for preliminary approval of the settlement and conditionally certified the settlement collective action. D.E. 87.  Pursuant to the Court's preliminary approval order, after updating the mailing addresses received from Defendant, Court-approved notice was mailed and emailed in English and Creole on February 15, 2019 to 820 Potential Opt-Plaintiffs.  *See* Declaration of the Settlement Administrator Cassandra Cita, ¶ 5-8.  Notices were remailed to any forwarding addresses received from the Post Office, and for those without forwarding addresses, the Settlement Administrator attempted to find a forwarding address using Accurint, a research tool owned by Lexis-Nexis, and provided

an additional notice to any new found address.  *Id.* at ¶ 10.  On March 11, 2019, the Settlement Administrator mailed and emailed a reminder postcard to 384 Potential Opt-In Plaintiffs who had not returned a Consent to Join Form as of that date.  *Id.* at ¶ 9.

In response to the notice mailing, 623 Potential Opt-In Plaintiffs joined the five Named Plaintiffs in filing Consent to Join Forms.  *Id.* at ¶ 12.  The filing of the 623 Opt-In Plaintiffs along with the five Named Plaintiffs represent 77 percent of the 820 potential members of the certified collective action.  *Id. ¶* 5 and 12.

Throughout the notice and claim-filing period, Plaintiffs' counsel and the Settlement Administrator responded to Potential Opt-in Plaintiffs who had questions regarding the proposed settlement.  *See Id,* ¶ 11; Supplemental Declaration of Sam J. Smith (Smith Supp. Decl."), ¶ 8.  Only one objection was filed with the Settlement Administrator.  *See* Cita Decl. ¶ 13.   The lone objector, Tanisha Shirley, also filed a Consent to Join Form agreeing to be bound by the settlement.  D.E. 88-9, at 17.

With the approval of this Court, the parties' Settlement Agreement will resolve this case and the FLSA overtime claims that were brought in this action for the Named Plaintiffs and the Opt-in Plaintiffs who submitted Consent to Join Forms consenting to participate in the settlement.  Plaintiffs' counsel believe the Settlement Agreement is fair, adequate and reasonable; particularly in light of the substantial risks involved in continued litigation. D.E. 84, Smith Decl., ¶ 20.

## II.     <u>SUMMARY OF SETTLEMENT TERMS</u>

The Settlement Agreement provides that Defendant will pay a gross settlement amount of $361,103.24 ("Gross Settlement Fund").[1]  *See* D.E. 84-1, Settlement Agreement, Section IV.B.

---

[1] Defendant fully funded the Gross Settlement Fund on February 14, 2019.  Cita Decl., ¶ 14.

The Gross Settlement Fund is inclusive of payments for all Named Plaintiffs and Opt-in Plaintiffs, settlement administration fees, and service payments and attorneys' fees and costs approved by the Court. *Id*. In addition to this amount, Defendant will pay its share of employer taxes on the back wages portion of the settlement. *Id*. at Section IV.B.2.

Settlement payments to Plaintiffs are based upon a formula that credited Potential Opt-in Plaintiffs with $20.93 for every occurrence in which they earned a Merit Payment in a month in which they also worked any overtime hours throughout the Relevant Time Period. D.E. 84, Smith Decl., ¶ 12. This amount was determined by an analysis of time and payroll records and by determining on average the overtime due for Merit Payments plus an additional amount of consideration for liquidated damages. *Id*. In addition, Plaintiffs are to receive $50.00 for release of other FLSA claims that could have been brought in the case. *Id*.

Through this settlement, Defendant has also agreed to a modification of the paystub for School Bus Drivers along with a notice to all current School Bus Drivers it employs providing an explanation of its methodology for calculating overtime pay. *See* D.E. 84-1, Section VIII. Specifically, Defendant agreed that no later than February 22, 2019 it would implement and rollout a revised version of the paystub for School Bus Drivers to include: (1) the employee's annual compensation to be paid for the school year; (2) the number of duty days the employee is contracted to work for the school year; (3) the number of pay periods over which the employee will be paid for the year; and (4) the scheduled hours the employee is assigned to work for the week, which corresponds to the employee's base weekly compensation. *Id*. Furthermore, Defendant agreed to issue a notice explaining the foregoing additional fields and its method of calculating overtime in plain language to its current School Bus Drivers. *Id*. As agreed, on or about January 30, 2019, Defendant rolled out the revised paystubs and on February 22, 2019

provided the notice explaining the methodology used to calculate overtime payments. *See* Smith Supp. Decl., at ¶ 6.

Defendant has also agreed to a modest service payment of $1,500 to each of the five Named Plaintiffs for their role in representing the Potential Opt-in Plaintiffs, as well as settlement administration expenses up to $27,000, and attorneys' fees and costs of $115,000. D.E. 84-1, Sections IV.A.1 and C.1-2.

In exchange for these settlement terms, the Named Plaintiffs and Qualified Claimants, by submitting a Consent to Join Form, have agreed to dismiss this case with *prejudice* and release their FLSA claims against Defendant that could have been brought in the case through January 24, 2019. *Id.,* Section V.

## III.    CERTIFICATION OF THE COLLECTIVE ACTION PURSUANT TO SECTION 216(b) OF THE FLSA

Pursuant to the Court's preliminary approval Order, D.E. 87, on February 15, 2019, notice was mailed and emailed to, and a collective action was conditionally certified, pursuant to 29 U.S.C. § 216(b) to include:

> School Bus Drivers who were employed by Defendant and received an attendance incentive payment ("Merit Payment") anytime between May 18, 2016 to January 24, 2019 (the "Relevant Time Period") and worked overtime during the period preceding the Merit Payment during which the Merit Payment was earned.

During the ensuing notice period, the response was uniformly in support of the settlement with only one objection being received by an Opt-In Plaintiff Tanisha Shirley, who also joined the case and agreed to the settlement provisions. A total of 623 Opt-In Plaintiffs have joined the original five Named Plaintiffs representing 77 percent of the potential members of the collective action. No evidence contradicting the conditional certification of the case as a collective action

has been submitted.  Accordingly, it is now appropriate for the Court to enter a final order certifying the case as a collective action for settlement purposes.

IV.    **THE PARTIES SETTLEMENT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS**

    A.    **The Settlement Meets the Requirements Set Forth in *Lynn's Food Stores, Inc.***

The Plaintiffs seek Court approval of their settlement because, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354.  This is because the employees are "likely to be represented by an attorney who can protect their rights under the statute." *Id.*  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allow[s] the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing the settlement, this Court finds that the settlement is fair and should be approved.  Specifically, the settlement resolves a *bona fide* dispute between the parties with respect to whether the employees at issue are entitled to overtime compensation under the FLSA and the amount of compensation due.  The Plaintiffs faced significant factual and legal obstacles which posed the risk of an unsuccessful outcome if this case were to proceed to trial.  Further, Plaintiffs were represented by experienced counsel, who have substantial experience litigating FLSA

collective and class actions (*see* D.E. 84, Smith Decl., ¶¶ 4, 5); and who, in the "adversarial context of a lawsuit" negotiated for the Plaintiffs a "reasonable compromise of disputed issues." *Id*. Being an arms-length resolution of a *bona fide* dispute, the settlement enjoys a presumption that the settlement is appropriate.

**B.     The Settlement Agreement Was Reached By Arms-Length Negotiations.**

The parties' settlement is the result of hard-fought adversarial, arm's length negotiations that took place over several months. *See* D.E. 84, Smith Decl., ¶ 9. It was negotiated at arm's-length by experienced counsel free from fraud or collusion. *Id*. Its adversarial nature is evidenced by the discovery and litigation activities, which included the exchange of thousands of pages of documents, extensive payroll and timekeeping data, and pleadings arguing the factual and legal merits and defenses to the claims. A "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995) (Citang *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)). In evaluating whether the proposed settlement represents such a compromise, this Court "is entitled to rely upon the judgment of experienced counsel" in its evaluation of the merits of a class action settlement. *Cotton,* 559 F.2d at 1330. Plaintiffs' counsel consider the settlement to constitute a compromise of significant benefit especially when weighed against the uncertain outcome and risk of continued litigation, and the expense and delay which would result from prosecuting this action against Defendant through trial and appeal. D.E. 84, Smith Decl., ¶ 10. Furthermore, the settlement terms represent a successful resolution particularly in light of Defendant's ardent position that the Plaintiffs could not assert a cognizable claim under the FLSA; and that even if they could, no damages would be due for unpaid overtime because of Defendant's position that it paid for any and all overtime due. *See Id*., ¶ 20; D.E. 54 at 1, 3-5.

### C.    The Settlement Is a Fair, Reasonable, and Adequate Resolution of *Bona Fide* Disputed Issues.

Defendant has repeatedly asserted that it has paid Plaintiffs all the overtime compensation due to Plaintiffs under the FLSA.  Thus, there exists a *bona fide* dispute as to whether the law requires, as Plaintiffs have argued, that all straight-time pay must be paid in an overtime week under the FLSA before overtime pay is deemed paid, whether Defendant failed to do this with its payment plan for School Bus Drivers, and whether any overtime remains to be due in addition to the overtime payments already made.  D.E. 54.  Plaintiffs would have faced significant obstacles and risked an unsuccessful outcome if this case were to continue in litigation and to trial as Defendant has argued in three motions to dismiss that Plaintiffs fail to state a cognizable claim for relief under the FLSA.  *See* D.E. 9, 25, 54.  In its latest motion to dismiss, Defendant moved to have the case dismissed *with prejudice*.  D.E. 54.  If the case were tried the Court could possibly find that Plaintiffs are due no overtime at all under various defenses available to Defendant.  If the Court was persuaded by Defendant's arguments, or its defenses were successful, such a finding would have rendered Plaintiffs with no relief whatsoever.  The risks inherent in this case strongly supported settlement at this stage of litigation.

In addition to meeting the *Lynn's Food* requirements that the settlement occur in the context of an adversarial lawsuit and resolve issues that are in dispute, the settlement here will also be found to be fair, adequate and reasonable using the standard articulated for approving the settlements of Rule 23 class actions.[2]  In *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.

---

[2] The Eleventh Circuit has not required that collective action approvals under Section 216(b) of the FLSA meet the Rule 23 settlement approval factors in order for district courts to approve the settlement of collective actions under the FLSA.  The approval of Rule 23 class actions is designed to protect absent class members from the resolution of their claims without their approval.  Unlike Rule 23 settlements, collective action settlements under Section 216(b) are only binding on those potential opt-in plaintiffs who consent to join the action.  In any event, the settlement here meets the applicable Rule 23 settlement approval factors.

1984), the Eleventh Circuit suggested six factors for use in determining whether a Rule 23 settlement is fair, adequate, and reasonable.  These factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*  As demonstrated herein, when evaluated under the *Bennett* factors, this Court finds that the Parties' settlement is fair, adequate, and reasonable.

### 1.     The Likelihood of Success at Trial

There exists a *bona fide* dispute as to whether Defendant has paid Plaintiffs all the overtime due under the FLSA, or whether, as Plaintiffs have argued, overtime remains due in addition to the overtime payments already made.  D.E. 54.  Plaintiffs would have faced significant obstacles and risked an unsuccessful outcome if this case were to continue in litigation and to trial as Defendant has argued in three motions to dismiss that Plaintiffs fail to state a cognizable claim for relief under the FLSA.  *See* D.E. 9, 25, 54.

In sum, the Plaintiffs faced factual and legal issues at trial which would make the likelihood of success in the face of dispositive motions and trial uncertain.  The risks inherent in this case strongly supported settlement at this stage of litigation.

### 2.     The Settlement Falls Within The Range of Recovery Such That This Court Should Find It Is Fair, Adequate and Reasonable

The second and third *Bennett* factors, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable.  *See Behrens v. Wometco Enter., Inc*., 118 F.R.D. 534, 541 (S.D. Fla. 1988).  The "[c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate

the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322-

1323 (S.D. Fla. 2005).  Moreover, "the existence of strong defenses to the claims presented

makes the possibility of a low recovery quite reasonable." *Id.*; *see*, *e.g.*, *Bennett*, 737 F.2d at 986;

*Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or

even a thousandth of a single percent of the potential recovery").

This settlement resolves complex FLSA overtime claims for the 628 Plaintiffs who joined

this action.  It was derived from an extensive review of payroll and timekeeping records and was

evaluated on the basis of detailed models of the damages that could be recovered.    The

monetary settlement amount was reached by calculating the average amount of overtime due on

Merit Payments during the Relevant Time Period.  D.E. 84, Smith Decl., ¶ 12.  Defendant agreed

to increase this calculated amount by paying an additional amount as liquidated damages and by

paying $50.00 in back pay and liquidated damages for release of other possible overtime claims.

*Id.*  Plaintiffs' counsel estimates that the Plaintiffs recovered more than 100 percent of the back

pay and liquidated damages that could have been recovered for Defendants' failure to pay

overtime compensation on the Merit Payments paid to Plaintiffs and that Plaintiffs recovered

approximately 7.5 percent of the damages that could have been recovered for failure to timely

pay overtime during Defendant's regular pay plan for School Bus Drivers that, pursuant to a

collective bargaining agreement, spreads regular pay to School Bus Drivers in equal amounts

over 22-pay periods over the school calendar year (so that School Bus Drivers receive paychecks

during students' Christmas break and the like).    Smith Supp. Decl., ¶ 4.  Of course, if

Defendants were successful in proving their affirmative defenses, the result could have been no

recovery at all, and the Plaintiffs may have had to pay Court costs.

In addition to the amount that was negotiated for back wages and liquidated damages for Qualified Claimant, the settlement includes up to $27,000 in claims administration fees, $7,500 for service payments, and $115,000 in attorneys' fees and costs for a total Gross Settlement Fund of $361,103.24.  The average settlement payment made available to Potential Opt-In Plaintiffs in this case is $255.93 and to up $552.20.  D.E. 84, Smith Decl., ¶ 12.  This settlement took into account Defendant's asserted defenses to this case that no overtime was due, and credited Plaintiffs' claim that overtime compensation was unpaid for periods when Merit Payments were earned and overtime hours worked.  *Id.*, ¶ 20 (*see* D.E. 54 at 1, 3-5).  The settlement also provides non-monetary relief to Plaintiffs and other School Bus Drivers that outside of settlement would not have been possible because injunctive relief is not available under the FLSA for overtime compensation claims.  D.E. 84, Smith Decl., ¶ 19.  Defendant has agreed as part of the settlement to revise its paystubs and provide detailed explanations to School Bus Drivers assisting them to understand how their overtime is calculated and paid—an issue that motivated this litigation in the first instance.  *Id.*, ¶ 12.

Based on the significant risks of not prevailing in this action, Plaintiffs recovery of more than 100 percent of the damages for their claim for back pay and liquidated damages for Defendant's alleged failure to pay overtime compensation on Merit Payments that were paid to Plaintiffs and the recovery of 7.5 percent of the damages that could have been recovered for failure to pay overtime compensation based on Defendant's 22 equal pay period plan, along with the other monetary and non-monetary recoveries in this action, the Court finds that the settlement falls within the range at which a settlement is fair, adequate, and reasonable.

### 3.    The Complexity, Expense and Duration of Litigation

This complex collective action was resolved only after extensive litigation, research and analysis and negotiations. The Parties fully briefed the factual and legal issues surrounding Defendants' 22-payment pay plan.  Counsel for the Parties spent an enormous amount of time and effort advocating legal theories and modeling the potential damages at issue in this case. Smith Supp. Decl. ¶ 3.  The Parties exchanged extensive documents, damage calculations, compensation information, and engaged in detailed evaluation of Defendants' compensation practices for School Bus Drivers.  *Id.*  The settlement was the result of hard-fought adversarial litigation and arm's length negotiations that took place over more than eight months.  The complexity, the expense of continued litigation, and duration of the litigation all support a finding that the settlement here is fair, adequate, and reasonable.

### 4.    The Substance and Amount of Opposition to the Settlement

As directed by the Court, the Settlement Administrator provided notice to the Potential Opt-In Plaintiffs in the form approved by the Court on January 31, 2019.  Cita Decl., at ¶ 5-8. The notice invited Potential Opt-In Plaintiffs to lodge any objections to the settlement with the Settlement Administrator.  Only one objection was received by Tanisha Shirley, but Ms. Shirley also filed a Claim Form and agreed to accept the settlement if approved by the Court.  *Id.,* ¶ 13 and Exhibit E (Shirley Objection); D.E. 88-8, at 17 (Shirley CTJ).  Ms. Shirley raises three issues in her objection.

First, Ms. Shirley asserts that the notice did not explain to her how the settlement damages were calculated.  Ms. Shirley's objection on this ground is overruled.  On the first page of the notice, Potential Opt-In Plaintiffs were informed of the amount of their settlement and told that "[t]his amount was determined by crediting you with $20.93 for every Merit Payment you

earned in a month that you also worked any overtime hours during the Relevant Liability Period," which is defined in the notice as May 18, 2016 to January 24, 2019. Exhibit A to Cita Decl., Notice at page 1. The notice further provided, "You will also receive an additional $50.00 as additional consideration for your release of all overtime claims that could have been brought in the case." *Id.*

Second, Ms. Shirley objects to her settlement being paid as 50 percent back wages being reported on a W-2 form and 50 percent being reported on a Form 1099. The basis for this portion of her objection appears to be that Ms. Shirley believes that that the payment of liquidated damages being reported to the IRS using a Form 1099 is being made as a payment to an independent contractor. However, the payment at issue here is a payment of liquidated damages, which is properly reported on a 1099 Form. Cita Decl., ¶ 14; *Obando v. SBC Food Service, Inc.,* Case No. 6:18-cv-856-Orl-41TBS, 2019 WL 1093446, *3 (M.D. Fla. Feb. 5, 2019) ("Normally, the plaintiff in an FLSA settlement receives a W-2 for wages and a [Form] 1099 for the liquidated damages paid pursuant to the agreement."). Because liquidated damages are properly reported to the IRS using a Form 1099, this aspect of Ms. Shirley's objection is overruled.

Third, Ms. Shirley asserts that the overtime she earned during the period May 2016 to January 2019 should have been paid at $21.00 per hour, which would have exceeded her settlement award total of $238.32. Plaintiffs' counsel reviewed numerous payroll records of Defendant and has determined that the overtime rate used by Defendant exceeded one and one-half of their regular rate. For example, in Ms. Shirley's case, she was paid at an overtime rate equal or exceeding her regular rate times 1.5 for all workweeks that she worked overtime during the Relevant Time Period and was always paid over $21.00 per hour. *See* Smith Supp. Decl., ¶ 5.

Because Ms. Shirley was paid more than one and one-half of her regular rate equating to more than $21 per hour for her overtime hours, this aspect of her objection is overruled.

Finally, because none of Ms. Shirley's objections have merit and she has agreed to be bound by the settlement in this case, she will be allowed to participate in the settlement and recover her settlement share.  This is consistent with the Court-approved notice, which informed Potential Opt-In Plaintiffs that "[i]f the Court approves the settlement over your objection, you will receive your share of the settlement funds if you timely submit a claim form."  Exhibit A to Cita Decl., Notice at page 2.

Furthermore, 623 Opt-In Plaintiffs and the five Name Plaintiffs filed Consent to Join Forms for an opt-in percentage of 77 percent.  Cita Decl., at ¶ 12.   This significant opt-in rate and the fact that only one objection was filed shows that the members of the collective action strongly support the settlement and support approval by this Court.

### 5.        The Stage Of Proceedings At Which The Settlement Was Achieved

The Parties reached settlement after hard-fought adversarial litigation and arm's length negotiations that took place over more than eight months.  The Parties were only able to reach this settlement after fully litigating three motions to dismiss, the taking of a deposition of Defendant's payroll manager, and exchanging voluminous payroll documents, and time records. The Parties exchanged extensive damage calculations and compensation information, and engaged in detailed evaluation of Defendant's compensation practices for bus drivers and the school board's defense that it had paid all overtime compensation that was due to the School Bus Drivers.  Smith Supp. Decl., ¶ 3.  The Parties were unable to reach a settlement in September 2018 even after attending a face-to-face settlement meeting.  The Parties continued to work hard

to resolve this case and finally reached agreement in January 2019 after months of settlement negotiations and extensive damage calculations.

In short, all relevant factors support a finding that the settlement represents a fair, adequate, and reasonable resolution of a *bona fide* dispute.

### D.     Modest Service Payments Are Approved for the Named Plaintiffs Who Helped Achieve This Favorable Settlement

During the claims-filing period, all Potential Opt-in Plaintiffs received notice that the Named Plaintiffs who brought this case and who helped prepare the complaints filed in this case, and participated in discovery and settlement negotiations, would seek to receive modest service payments under the terms of the proposed settlement of $1,500 per Plaintiff. *See* Exhibit A to Cita Decl., Notice at page 1 and D.E. 84, Smith Decl., ¶ 13. These payments recognize the dedication these individuals demonstrated to this litigation and the extent of their efforts in assisting with the investigation, discovery including completing Court interrogatories, preparing for negotiation of the claims, consulting with Plaintiffs' counsel to determine a fair settlement fund, and other contributions that they made for their benefit and the benefit of Potential Opt-in Plaintiffs. D.E. 84, Smith Decl., ¶ 13. No objections were filed that objected to the payment of these service payments and the service payments are in addition to the amounts Plaintiffs and Opt-In Plaintiffs will receive for their back pay and liquidated damage awards. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (*quoting In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) (approving $303,000 payment to each class representative plaintiff in employment case where potential class members on average received $38,000). The modest service payments sought here are appropriate and reasonable, and consistent with awards

16

made by other courts.  *See e.g. North Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662

(M.D. Fla. 2011) (awarding $5,000 in incentive awards to the named class representatives);

*Holman*, 778 F. Supp. 2d at 1315, 1319 ($29,500 in service awards approved); *Smith v. Wm.

Wrigley Jr. Co.,* 2010 WL 2401149 (S.D. Fla. 2010) (preliminarily approving $10,000 incentive

award for lead plaintiff); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla.

2007) (approving $7,500 in service awards to the three representative plaintiffs).  Accordingly,

this Court approves the payment of $1,500 to each of the Named Plaintiffs as service payments.

### E.     Plaintiffs' Counsel Should Be Awarded $115,000 for Attorneys' Fees, Costs, and Expenses

The settlement provides for Plaintiffs' counsel to receive $115,000 from the settlement

fund to compensate them for their representation of the Plaintiffs and Opt-In Plaintiffs.  *See* D.E.

84, Smith Decl., at ¶ 14.  The Parties negotiated this amount separately after an amount had been

agreed to for the resolution of the underlying claims of the Plaintiffs and Potential Opt-In Plaintiffs.

Smith Supp. Decl., ¶ 8.  Plaintiffs' counsel now seek to be awarded this amount to compensate

them for the attorneys' fees, costs and expenses they have incurred representing the Plaintiffs.  *Id.*

The $115,000 from the Gross Settlement Fund is reasonable in light of the fact that a

settlement was obtained in spite of Defendant's vigorous defenses, including without limitation its

defense that it had paid bus drivers all overtime compensation due under the FLSA and because

Plaintiffs' counsel negotiated the amount of fees, expenses, and costs after the amount to be paid

to the Plaintiffs had been negotiated.[3]  In addition, Plaintiffs' counsel's Lodestar fees, costs, and

---

[3]     *See, e.g., Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *7 n.4 (S.D. Ala. Feb. 14, 2015)
(persuasive district court authority has deemed scrutiny of the reasonableness of plaintiff's
agreed-upon attorney's fees to be unnecessary in an FLSA settlement where the plaintiff's
attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff,
except in circumstances where the settlement does not appear reasonable on its face or there is
reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid
to his attorney")(citations and internal quotation marks omitted); *Bonetti v. Embarq Management*

17

expenses exceed $200,000. *Id.* Finally, after Court approval of the settlement, Plaintiffs' counsel will continue to provide legal advice to Plaintiffs regarding the terms of the settlement and will facilitate the execution of the settlement including supervising the Settlement Administrator in administering the settlement. *Id.*

This case settled after more than eight months of litigation and negotiations, including but not limited to, the exchange of voluminous discovery and numerous settlement negotiations. *Id.* ¶ 3, 8. Plaintiffs and Opt-In Plaintiffs have benefited and will continue to benefit by these efforts, and it is appropriate that Plaintiffs' counsel be compensated for performing these services.

Furthermore, the notice provided to Potential Opt-in Plaintiffs explained that Plaintiffs' counsel would seek to recover $115,000 from the settlement fund as compensation for their attorneys' fees and costs. No Potential Opt-In Plaintiff objected to the amount of fees and costs sought by Plaintiffs' counsel, the fees and costs were negotiated separately after the underlying claims of the Plaintiffs were negotiated and the fees and costs are reasonable and represent a significant reduction on the fees and costs incurred by Plaintiffs' counsel. Based on the foregoing, this Court approves Plaintiffs' counsel's request to be paid $115,000 from the Gross Settlement Fund.

---

*Co.,* 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009)(deeming scrutiny of reasonableness of attorney's fee payment in FLSA settlement unnecessary unless "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney"); *Wing v. Plan B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (declining to assess reasonableness of attorney's fee payment in FLSA settlement where "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel"); *Gutierrez v. Coco Baleadas Corp.*, 2018 WL 6573131, at *1-2 (S.D. Fla. Aug. 30, 2018)("[w]hen, as here, the attorneys' fees are negotiated separately and after settlement of the Plaintiffs' wage claims, Courts generally approve the settlement as Plaintiff's compromise of his claim could [not] have influenced any amount received by his counsel").

**F.      Simpluris Should be Paid $19,000 for Performing the Duties of Settlement Administrator**

The Court approved Simpluris as the Settlement Administrator to administer the

settlement in accordance with the Settlement Agreement.  D.E. 87.  Simpluris has been and will

be responsible, among other things, for: (a) printing, translating and mailing the Notice of

Proposed Collective Action Settlement ("Class Notice"), Consent to Join Form, and Mailing

Envelope (together, "Notice Packet") to Class Members; (b) conducting a National Change of

Address ("NCOA") database search prior to mailing the Notice Packets to Class Members and

performing a skip-trace search on any Notice Packet returned as undeliverable; (c) receiving and

processing Consent to Join Forms and Notices of Objection; (d) sending reminder postcards to

Class Members; (e) distributing the Individual Settlement Payments to all Class Members who

submit timely and valid Consent to Join Forms ("Claimants") as provided in this settlement; and

(f) performing any other duties necessary to carry out its responsibilities as set forth in the

Agreement. *See* Cita Decl., ¶ 3.  The settlement provided for the payment from the Gross

Settlement Fund of a maximum of $27,000 for the performance of these duties.  Simpluris seeks

the payment of total of $19,000 from the Gross Settlement Fund for performance of its duties as

the Settlement Administrator.  The parties agree this amount is reasonable and is substantially

below the $27,000 that had been allocated for settlement administration.  For these reasons,

Simpluris is approved to be paid $19,000 from the Gross Settlement Fund.

For the foregoing reasons, it is hereby **ORDERED** as follows:

1.      Plaintiffs' Unopposed Motion for Final Certification Pursuant to Section

216(b) of the FLSA, Approval of the Parties' Settlement Agreement, and

Dismissal of the Collective Action With Prejudice Reserving Jurisdiction to

Enforce the Terms of Settlement (D.E. 89) is **granted.**  The settlement of

Plaintiffs' FLSA claims is **approved** as fair and reasonable pursuant to the analysis required by the Eleventh Circuit in *Lynn's Food Stores, Inc., v. United States,* 679 F.2d 1350 (11th Cir. 1982).  In accordance with the requirements of *Lynn's Food,* a stipulated final judgment of dismissal *with prejudice* will be entered;

2. This case is finally certified as a collective action pursuant to Section 216(b) of the FLSA consisting of those School Bus Drivers who were employed by Defendant and received an attendance incentive payment ("Merit Payment") anytime between May 18, 2016 to January 24, 2019 (the "Relevant Time Period"), worked overtime during the period preceding the Merit Payment during which the Merit Payment was earned, and opted into this case.

3. The Effective Date of the Settlement shall be thirty-five (35) days after this Order, if no appeal is taken from this Order.  If an appeal is taken from this Order overruling Tanisha Shirley's objection to the settlement, then the effective date of final approval shall be ten (10) days after the appeal is withdrawn or after an appellate decision affirming this Order becomes final.

4. The individuals identified on the Settlement Administrator's chart attached as Exhibit D to the Declaration of Cassandra Cita are Qualified Claimants entitled to receive Settlement Payment Checks.

5. Within ten (10) days of the Effective Date of the Settlement, checks for $1,500.00 for Service Payments shall be mailed to the five Named

Plaintiffs and Settlement Payment Checks to all Qualified Claimants shall be mailed by the Settlement Administrator.

6.       Within 14 days after a request is received by the Settlement Administrator, Defendant shall pay the employer's share of payroll taxes for the back pay portions of the payments made to Qualified Claimants.

7.       The Qualified Claimants will have one hundred and twenty (120) calendar days after Settlement Payment Checks are mailed (the "Check Issuance Date") to cash or deposit the checks. If any Qualified Claimant does not cash or deposit the Settlement Payment Check within 120 days from the Check Issuance Date, the Settlement Payment Check will be null and void. However, if any Settlement Payment Check is returned to the Settlement Administrator as undeliverable to a Qualified Claimant within the one hundred and twenty days following the mailing date of the initial distribution to Qualified Claimants, the Settlement Administrator shall promptly attempt to locate such Qualified Claimant using electronic searches, and shall promptly re-mail the check to such person if possible. If, within the one hundred and twenty (120) days following the initial mailing of the Settlement Payment Checks, a Qualified Claimant informs the Settlement Administrator or Plaintiffs' Counsel that the Qualified Claimant has not received the Settlement Payment Check, the Settlement Administrator shall confirm the Settlement Payment Check has not been cashed or deposited and, following such confirmation, shall void the initial Settlement Payment Check, issue a replacement Settlement Payment

Check, and mail the replacement Settlement Payment Check to the address provided by the Qualified Claimant.

8. Within ten (10) days of the Effective Date of the Settlement, the Settlement Administrator shall wire $115,000.00 to Plaintiffs' Counsel as payment for Plaintiffs' attorneys' fees and costs.

9. Within ten (10) days of the Effective Date of the Settlement, Simpluris shall be paid $19,000.00 for serving as the Settlement Administrator in this case.

10. Within ten (10) days of the payment of the Settlement Payment Checks, service payments, payments to the Settlement Administrator, and attorneys' fees and costs, the amounts allocated to Potential Opt-In Plaintiffs who did not timely file Consent to Join Forms from the Gross Settlement Fund shall be wired to Defendant.

11. On 130th calendar day following the date of disbursement of the payments of the Settlement Payment Checks, Service Payment Checks, attorneys' fees and costs, and Settlement Administrator expenses, any amounts remaining in the Qualified Settlement Fund shall be returned to the Defendant via wire transfer.

12. All Named Plaintiffs and Opt-In Plaintiffs hereby unconditionally and irrevocably release, acquit, satisfy and forever discharge the School District of Palm Beach County, its officers, directors, employees, successors, and assigns, the Superintendent, and the members of the School Board of Palm Beach County in both their official capacities and

as individuals (hereinafter referred to as " Defendant Releasees") from any and all claims that could have been brought in this case under the Fair Labor Standards Act that the Qualified Claimant Releasors now have, or hereafter can or may have against the Defendant Releasees  from the beginning of the world until January 24, 2019 whether known or unknown, both legal and equitable arising out of, or related to Qualified Claimant's employment with Defendant ("Released Claims").

13.     This Court retains jurisdiction for the limited purpose of enforcing the terms of this Order.


DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this ____ day of _____, 2019.


_____
DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE