UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80660-Civ-Brannon

JOEL PAULOT, GARRY JEAN,
FENEL JH PETIT-HOMME,
ANGELIA SISTRUNK, and
KENNETH PINNOCK, individually,
and on behalf of all other similarly
situated individuals,

    Plaintiffs,

vs.

THE SCHOOL BOARD OF PALM
BEACH COUNTY, FLORIDA,

    Defendant.
_____/

## ORDER GRANTING MOTION FOR FINAL CERTIFICATION, APPROVING SETTLEMENT, AND DISMISSING CASE WITH PREJUDICE

THIS MATTER is before the Court on Plaintiffs' Motion [DE 89] for a Court Order: (1) finally certifying this collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") for purposes of settlement; (2) approving the settlement terms; (3) approving service payments for the five named Plaintiffs; (4) approving the attorneys' fees and costs to be paid to Plaintiffs' counsel; (5) approving the amount to be paid to the Settlement Administrator; and (6) dismissing this case with prejudice, while retaining jurisdiction to enforce the terms of the settlement. Out of 820 potential opt-in plaintiffs, a grand total of 628 individuals (inclusive of the five named Plaintiffs) have consented to join the settlement. Only one of these individuals has raised objections. Defendant has no objection and supports the settlement, which contains monetary and non-monetary provisions. The Court held a final fairness hearing on May 14, 2019. Being duly advised, Plaintiffs' Motion [DE 89] is GRANTED for the following reasons.

1

## I. BACKGROUND

On May 18, 2018, the five named Plaintiffs—Joel Paulot, Garry Jean, Fenel JH Petit-Homme, Angelia Sistrunk, and Kenneth Pinnock ("Named Plaintiffs")—filed this collective action against Defendant, on behalf of themselves and other similarly situated bus drivers, alleging overtime wage violations under the FLSA [DE 1]. Each Plaintiff was employed by the Palm Beach County School Board as School Bus Drivers and earned attendance incentive payments ("Merit Payments") between May 18, 2016 and January 24, 2019 (the "Relevant Time Period") and worked overtime hours during the period in which the Merit Payments were earned. Defendant denies Plaintiffs' claims. The ensuing litigation was active and adversarial. Defendant moved three times to dismiss Plaintiffs' complaint for failure to state valid claims under the FLSA [DE 9, DE 25, DE 54], which Plaintiffs opposed [DE 37, DE 62]. Plaintiffs also filed amended complaints to resolve alleged deficiencies [DE 11, DE 42].

At the center of this case is Defendant's pay plan for School Bus Drivers. Pursuant to a Collective Bargaining Agreement, the pay plan spreads regular pay to School Bus Drivers over 22-pay periods equally over the school calendar year (so that School Bus Drivers receive paychecks during students' Winter break and the like) and pays additional amounts as a Merit Payment (for perfect attendance and good driving records), as well as other remuneration (including overtime compensation) [DE 25 at 3-4] (Defendant's discussion of its pay plan for School Bus Drivers). While some overtime compensation is paid, Plaintiffs alleged they were not paid all the straight-time and overtime compensation due to them by operation of Defendant's pay plan [DE 37].

Defendant denied Plaintiffs' allegations and defended this case by asserting it paid a substantial amount of overtime to School Bus Drivers with nothing more due (even for Merit Payments) under the FLSA's mandates [DE 25 at 4] (asserting that each Plaintiff "made thousands of

dollars in overtime pay on top of their respective salaries and they have been paid in accordance with the mandates of the FLSA for all of the hours they worked").

Extensive payroll records, timekeeping records, and policy documents regarding Defendant's payment methods and FLSA compliance were exchanged during the discovery phase in this case [DE 83 at 6]. Detailed interrogatories with an accounting of the claims were exchanged. Plaintiffs also deposed Defendant's payroll manager who testified about Defendant's method for calculating overtime payments, which Plaintiffs contend did not compensate Plaintiffs for all straight-time wages during overtime weeks [*Id.*]. Thereafter, after three months of active negotiations—which included in-person meetings, telephonic conferences, settlement-privileged presentations of the factual and legal claims and defenses by each side, and production and evaluation of data and information for the settlement class—the parties reached a negotiated Settlement Agreement, which was fully executed by the Named Plaintiffs and the School Board of Palm Beach County following a public meeting held on January 23, 2019 [*Id.*]

On January 31, 2019, the Court granted Plaintiffs' unopposed motion for preliminary approval of the settlement and conditionally certified the settlement collective action [DE 87]. On February 15, 2019, a Court-approved notice was mailed and emailed in English and Creole to 820 Potential Opt-Plaintiffs [Cita[1] Decl. DE 91 ¶¶ 5-8]. Notices were re-mailed to any forwarding addresses received from the Post Office, and for those without forwarding addresses, the Settlement Administrator attempted to find a forwarding address using Accurint (a Lexis-Nexis research tool) and provided an additional notice to any newly found address [*Id.* ¶ 10]. On March 11, 2019, the Settlement Administrator mailed and emailed a reminder postcard to 384 Potential Opt-In Plaintiffs

---

[1] Cassandra Cita is employed as a Case Manger by Simplurious, Inc., the Court-approved Settlement Claims Administrator in this case [Cita Decl. DE 91 ¶ 1].

3

who had not returned a Consent to Join Form as of that date [*Id.* ¶ 9].

In response to the notice mailing, 623 Potential Opt-In Plaintiffs joined the five Named Plaintiffs by filing Consent to Join Forms [*Id.* ¶ 12]. The 623 Opt-In Plaintiffs plus the five Named Plaintiffs represent 77 percent of the 820 potential members of the certified collective action [*Id.* ¶¶ 5,12]. Throughout the notice and claim-filing period, Plaintiffs' counsel and the Settlement Administrator responded to Potential Opt-in Plaintiffs with questions about the proposed settlement [*Id,* ¶ 11; Smith[2] Supp. Declaration ("Smith Supp. Decl."), DE 90 ¶ 8]. Only one objection was filed with the Settlement Administrator [DE 91-1 at 25; Cita Decl. DE 91 ¶ 13]. The sole objector, Tanisha Shirley, also filed a Consent to Join Form agreeing to be bound by the settlement [DE 88-9 at 17].

Plaintiffs now seek Court approval of the Settlement Agreement and assert that the settlement represents a fair, adequate and reasonable resolution of this matter; particularly in light of the considerable risk involved in continued litigation. If approved, the parties' Settlement Agreement will resolve this case and the FLSA overtime claims that were brought in this action for the Named Plaintiffs and the Opt-in Plaintiffs who submitted signed forms consenting to the settlement.

## II.   SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement provides that Defendant will pay a gross settlement amount of $361,103.24 ("Gross Settlement Fund")[3] [DE 84-1, Settlement Agreement, § IV.B]. The Gross Settlement Fund is inclusive of payments for all Named and Opt-in Plaintiffs, settlement administration fees, and service payments and attorneys' fees and costs approved by the Court [*Id*.]

---

[2] Sam J. Smith, Esq. is a managing partner at the law firm of Burr & Smith, LLP and one of the three attorneys of record for Plaintiffs [Smith Decl. DE 84 ¶ 2].

[3] Defendant fully funded the Gross Settlement Fund on February 14, 2019 [Cita Decl. ¶ 14].

Defendant will also pay its share of employer taxes on the back wages portion of the settlement [*Id.* at § IV.B.2].

Settlement payments to Plaintiffs are based upon a formula that credits Potential Opt-in Plaintiffs with $20.93 for every occurrence in which they earned a Merit Payment in a month in which they also worked any overtime hours throughout the Relevant Time Period [Smith Decl. DE 84, ¶ 12]. This amount was determined by an analysis of time and payroll records and by determining on average the overtime due for Merit Payments plus an additional amount of consideration for liquidated damages [*Id.*]. In addition, each Plaintiff will receive $50.00 for release of other FLSA claims that could have been brought in the case [*Id.*].

As part of the settlement, Defendant has also agreed to modify the paystub for School Bus Drivers and provide a notice to all currently employed School Bus Drivers with an explanation of its methodology for calculating overtime pay [DE 84-1 § VIII]. Specifically, Defendant agreed that— by no later than February 22, 2019—it would implement and rollout a revised version of the paystub for School Bus Drivers to include: (1) the employee's annual compensation to be paid for the school year; (2) the number of duty days the employee is contracted to work for the school year; (3) the number of pay periods over which the employee will be paid for the year; and (4) the scheduled hours the employee is assigned to work for the week, which corresponds to the employee's base weekly compensation [*Id.*]. Defendant also agreed to issue a notice explaining the foregoing additional fields and its method of calculating overtime in plain language to its current School Bus Drivers [*Id.*]. As agreed, on or around January 30, 2019, Defendant rolled out the revised paystubs; and on February 22, 2019, Defendant provided the notice explaining the methodology used to calculate overtime payments [Smith Supp. Decl. DE 90 ¶ 6].

Defendant has also agreed to a service payment of $1,500 to each of the five Named Plaintiffs for their role in representing the Potential Opt-in Plaintiffs, as well as settlement administration expenses up to $27,000, and attorneys' fees and costs of $115,000 [DE 84-1 §§ IV.A.1 and C.1-2]. In exchange, the Named Plaintiffs and Opt-in Plaintiffs have agreed to dismiss this case with *prejudice* and release their FLSA claims against Defendant that could have been brought in the case through January 24, 2019 [*Id.* § V].

### III.     COLLECTIVE ACTION CERTIFICATION UNDER § 216(b) OF THE FLSA

Pursuant to the Court's preliminary approval Order [DE 87], on February 15, 2019, notice was mailed and emailed to, and a collective action was conditionally certified, under 29 U.S.C. § 216(b) to include:

> School Bus Drivers who were employed by Defendant and received an attendance incentive payment ("Merit Payment") anytime between May 18, 2016 to January 24, 2019 (the "Relevant Time Period") and worked overtime during the period preceding the Merit Payment during which the Merit Payment was earned.

During the ensuing notice period, the response was uniformly in support of the settlement with only one objection by Opt-In Plaintiff, Tanisha B. Shirley, who also joined the case and agreed to the settlement provisions. Ms. Shirley's objections will be addressed more fully *infra*.

Thus, 623 Opt-In Plaintiffs have joined the original five Named Plaintiffs for a total of 628 Qualified Claimants, which represents 77% of the potential members of the collective action. No evidence contradicting the conditional certification of the case as a collective action has been submitted. Accordingly, the Court finds it appropriate to now enter a final order certifying the case as a collective action for settlement purposes.

## IV.     THE SETTLEMENT REPRESENTS A FAIR AND REASONABLE COMPROMISE

### A.     The Settlement Meets the *Lynn's Food* Standard

In the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely to be represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allow[s] the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

Here, after scrutinizing the settlement, this Court finds that the settlement is fair and should be approved. The settlement resolves a *bona fide* dispute between the parties regarding whether the employee School Bus Drivers are entitled to overtime compensation under the FLSA and the amount of compensation due. The parties faced significant factual and legal obstacles if this case were to proceed. Further, all parties were represented by experienced counsel, who have substantial experience litigating FLSA collective and class actions, and who, in the "adversarial context of a lawsuit" negotiated a "reasonable compromise of disputed issues." *Id*. Being an arms-length resolution of a *bona fide* dispute, the Court finds the settlement to be a reasonable compromise.

### B.     The Settlement Agreement is the Result of Arms-Length Negotiations

The settlement is the result of adversarial, arm's length negotiations that took place over the course of several months [Smith Decl. DE 84 ¶ 9].  It was negotiated by experienced counsel free from fraud or collusion.  This lawsuit's adversarial nature is evidenced by the extensive discovery and litigation activities documented in the record—including the exchange of voluminous documents, extensive payroll and timekeeping data, and pleadings arguing the factual and legal merits and defenses to the claims.  A "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)[4]).  In evaluating if a settlement represents such a compromise, this Court may "rely upon the judgment of experienced counsel" in its evaluation of the merits of a class action settlement.  *Cotton,* 559 F.2d at 1330.  Here, counsel for the parties consider the settlement to be a compromise of significant benefit, especially when weighed against the uncertain outcome and risk of continued litigation, and the expense and delay which would result from continuing this action through trial and a possible appeal.

### C.     The Settlement is Fair, Reasonable, and Adequate

Based upon an independent review of the record and after a full review of the represented parties' fully-executed settlement agreement, the Court finds that the settlement represents a fair, reasonable, and adequate resolution of bona fide disputes in this contested matter.  Defendant has asserted that it has paid Plaintiffs all the overtime compensation due under the FLSA.  Plaintiffs disagree.  Thus, there is a bona fide dispute as to whether the law requires, as Plaintiffs have argued, that all straight-time pay must be paid in an overtime week under the FLSA before overtime pay is

---

[4] Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit.

deemed paid, if Defendant failed to do this with its payment plan for School Bus Drivers, and if any overtime remains due in addition to the overtime payments already made. The parties' settlement represents a reasonable compromise that avoids the costs and uncertainty of further litigation.

In addition to meeting the *Lynn's Food* requirements that the settlement occur in the course of an adversarial lawsuit and resolve disputed issues, the settlement here is also fair using the applicable standard for approving Rule 23 class action settlements.[5] In *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984), the Eleventh Circuit set forth six factors for determining if a Rule 23 settlement is fair, adequate, and reasonable. These factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.* These factors warrant approval of the settlement here.

### 1. *The Likelihood of Success at Trial*

As previously discussed, there exists a *bona fide* dispute as to whether Defendant has paid Plaintiffs all the overtime due under the FLSA, or whether additional overtime payments must be made. As evidenced by the extensive pretrial motion practice that occurred prior to the settlement, much remained to be decided on significant factual and legal issues which makes the likelihood of success at trial uncertain. This factor weighs in favor of settlement.

---

[5] The Eleventh Circuit does not require that collective action approvals under § 216(b) of the FLSA meet the Rule 23 settlement approval factors in order for a court to approve the settlement of FLSA collective actions. The approval of Rule 23 class actions is designed to protect absent class members from the resolution of their claims without their approval. Unlike Rule 23 settlements, collective action settlements under § 216(b) are only binding on those potential opt-in plaintiffs who consent to join the action. In any event, the settlement here meets the applicable Rule 23 settlement approval factors.

### *2.     The Settlement Falls Within a Fair Range of Recovery*

The second and third *Bennett* factors, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable. *See Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). The Court's "role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322-1323 (S.D. Fla. 2005). Moreover, "the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Id.*; *see*, *e.g.*, *Bennett*, 737 F.2d at 986; *Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

Here, the settlement resolves complex FLSA overtime claims for the 628 individuals who have joined this action. It stems from an extensive review of payroll and timekeeping records and was evaluated based on detailed models of the damages that could be recovered. The monetary settlement amount was reached by calculating the average amount of overtime due on Merit Payments during the Relevant Time Period [Smith Decl. DE 84 ¶ 12]. Defendant agreed to increase this calculated amount by paying an additional amount as liquidated damages and by paying $50.00 in back pay and liquidated damages for release of other possible overtime claims [*Id.*]. Plaintiffs' counsel estimates that Plaintiffs recovered more than 100% of the back pay and liquidated damages that could have been recovered for Defendant's failure to pay overtime compensation on the Merit Payments paid to Plaintiffs. Further, per Plaintiffs' counsel, Plaintiffs recovered approximately 7.5% of the damages that could have been recovered for failure to timely pay overtime during Defendant's regular pay plan for School Bus Drivers that—pursuant to a collective bargaining agreement— spreads regular pay to School Bus Drivers in equal amounts over 22-pay periods over the school

calendar year [Smith Supp. Decl. DE 90 ¶ 4]. Of course, if Defendants were successful in proving their affirmative defenses, the result could have been no recovery at all, and Plaintiffs may have had to pay Court costs.

In addition to the amount that was negotiated for back wages and liquidated damages, the settlement includes up to $27,000 in claims administration fees, $7,500 for service payments, and $115,000 in attorneys' fees and costs for a total Gross Settlement Fund of $361,103.24. The average settlement payment made available to Plaintiffs in this case is $255.93 and up to $552.20 [Smith Decl. DE 84 ¶ 12]. This settlement accounts for Defendant's asserted defenses that no overtime was due, and credited Plaintiffs' claim that overtime compensation was unpaid for periods when Merit Payments were earned and overtime hours worked.

The settlement also provides non-monetary relief to Plaintiffs and other School Bus Drivers that outside of settlement would not have been possible because injunctive relief is not available for FLSA overtime compensation claims. Specifically, Defendant has revised its paystubs and provided detailed explanations to School Bus Drivers assisting them to understand how their overtime is calculated and paid—an issue that motivated this litigation in the first instance [*Id*. DE 84 ¶ 12]. The second and third factors weigh in favor of settlement.

### 3. *The Complexity, Expense and Duration of Litigation*

This complex collective action was resolved after extensive litigation and discussions. The parties fully briefed various factual and legal issues. A review of the record makes apparent that counsel undertook a herculean effort advocating legal theories and modeling the potential damages at issue. The parties exchanged voluminous documents, extensive damage calculations, and compensation information. They also engaged in detailed evaluation of Defendants' pay practices for School Bus Drivers. The settlement is the result of extensive adversarial litigation and arm's

11

length negotiations that took place over more than eight months. The complexity, the expense of continued litigation, and duration of the litigation all support a finding that the settlement here is fair, adequate, and reasonable.

### 4. *The Substance and Amount of Opposition to the Settlement*

As directed by the Court, the Settlement Administrator provided notice to the Potential Opt-In Plaintiffs in a Court-approved form [Cita Decl. DE 91 ¶¶ 5-8]. The notice permitted Potential Opt-In Plaintiffs to lodge any objections to the settlement with the Settlement Administrator. Only one objection was received by Tanisha Shirley [DE 91-1 at 25]. Notably, however, Ms. Shirley also executed and submitted a Consent to Join Form and agreed to accept the settlement if approved by the Court [DE 88-9 at 17]. Ms. Shirley raises three issues in her written objection.

First, Ms. Shirley asserts that she was not notified "as to how the amount of my merit and overtime was calculated." On the first page of the notice, Potential Opt-In Plaintiffs were informed of the amount of their settlement and that "[t]his amount was determined by crediting you with $20.93 for every Merit Payment you earned in a month that you also worked any overtime hours during the Relevant Liability Period," which is defined in the notice as May 18, 2016 to January 24, 2019 [DE 91-1 at 4]. The notice further stated, "You will also receive an additional $50.00 as additional consideration for your release of all overtime claims that could have been brought in the case" [*Id.*]. Having been duly notified, Ms. Shirley's objection on this ground is overruled.

Second, Ms. Shirley objects to her settlement being paid as 50% back wages being reported on a W-2 form and 50% being reported on a Form 1099. The objection appears to be Ms. Shirley's belief that that the payment of liquidated damages being reported to the IRS using a Form 1099 is being made as a payment to an independent contractor. However, the payment at issue here is a payment of liquidated damages, which is properly reported on a 1099 Form [Cita Decl. DE 91 ¶ 14];

*see also Obando v. SBC Food Service, Inc.,* 2019 WL 1093446, *3 (M.D. Fla. Feb. 5, 2019) ("Normally, the plaintiff in an FLSA settlement receives a W-2 for wages and a [Form] 1099 for the liquidated damages paid pursuant to the agreement."). Because liquidated damages are properly reported to the IRS using a Form 1099, this aspect of Ms. Shirley's objection is also overruled.

Third, Ms. Shirley asserts that the overtime she earned for two years during the relevant period of May 2016 to January 2019 should have been paid at $21.00 per hour, which will exceed her settlement award total of $238.32. Plaintiffs' counsel reviewed numerous payroll records of Defendant and has determined that the overtime rate used by Defendant exceeded one and one-half of their regular rate. For example, per Plaintiffs' counsel review, Ms. Shirley was paid at an overtime rate equal or exceeding her regular rate times 1.5 for all workweeks that she worked overtime during the Relevant Time Period and was always paid over $21.00 per hour [Smith Supp. Decl. DE 90 ¶ 5]. Because Ms. Shirley was paid more than one and one-half of her regular rate equating to more than $21.00 per hour for her overtime hours, this aspect of her objection is overruled.

Finding no merit in Ms. Shirley's objections and because she has agreed to be bound by the settlement in this case by submitting a consent to join form, she will be allowed to participate in the settlement and recover her settlement share. This is consistent with the Court-approved notice, which advised Potential Opt-In Plaintiffs: "[i]f the Court approves the settlement over your objection, you will receive your share of the settlement funds if you timely submit a claim form" [DE 91-1 at 5].

Of the 820 potential class members, 623 consented to join the five Named Plaintiffs in the settlement. The grand total of 628 consenting Plaintiffs—which represents a significant opt-in percentage of 77% (628/820)—demonstrates an overwhelming acceptance of the settlement agreement. This significant opt-in rate and the fact that only one objection was filed shows that the members of the collective action strongly support the settlement and support approval by this Court.

### 5. *The Stage of Proceedings when the Settlement was Achieved*

The parties reached settlement after over eight months of adversarial litigation and arm's length negotiations. The parties reached this settlement following months of active litigation, motion practice, and extensive discovery. The parties exchanged damage calculations and compensation information, and engaged in a detailed evaluation of Defendant's pay practices for School Bus Drivers and Defendant's asserted defense that it had paid all overtime compensation that was due. This final factor weighs in favor of final settlement approval.

### D. Service Payments for the Named Plaintiffs

During the claims-filing period, all Potential Opt-in Plaintiffs received notice that the Named Plaintiffs who brought this case and helped to prepare the pleadings, and participate in discovery and settlement negotiations, would each seek $1,500 as a service payment under the terms of the proposed settlement. These payments recognize the dedication these individuals demonstrated to this litigation and the extent of their efforts in assisting with the investigation, discovery, negotiation, consulting with Plaintiffs' counsel to determine a fair settlement fund, and other meaningful contributions. There have been no objections to these service payments and the Court finds them to be appropriate, reasonable, and consistent with awards made by this and other courts. *See e.g. Hair v. Granite Telecommn's*, Case No. 17-81361-Brannon, DE 69 (S.D. Fla. Nov. 9, 2018); *N. Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662 (M.D. Fla. 2011) (awarding $5,000 in incentive awards to the named class representatives); *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149 (S.D. Fla. 2010) (preliminarily approving $10,000 incentive award for lead plaintiff); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 in service awards to the three representative plaintiffs). Thus, this Court approves the service payment of $1,500 to each of the five Named Plaintiffs as service payments.

### E.     Attorneys' Fees, Costs, and Expenses

The settlement provides for Plaintiffs' counsel to receive $115,000 to compensate them for the attorneys' fees, costs and expenses they have incurred representing the Named and Opt-In Plaintiffs. There have been no objections to this amount. Moreover, the parties negotiated this amount separately after an amount had been agreed to for the resolution of the Plaintiffs' underlying claims [Smith Supp. Decl., DE 84 ¶ 8].

When "the attorneys' fees are negotiated separately and after settlement of the Plaintiffs' wage claims, Courts generally approve the settlement as Plaintiff's compromise of his claim could [not] have influenced any amount received by his counsel." *Gutierrez v. Coco Baleadas Corp.*, 2018 WL 6573131, at *1-2 (S.D. Fla. Aug. 30, 2018). Such is the case here. The Court finds the requested amount of $115,000 to be reasonable considering the work performed by Plaintiffs' highly-experienced counsel who not only worked extensively for over eight months to ensure a favorable settlement for each Plaintiff, but also agrees to continue providing legal advice to Plaintiffs regarding the settlement terms and to facilitate the execution of the settlement including supervising the Settlement Administrator in administering the settlement. It is clear to this Court that Plaintiffs have benefited and will continue to benefit by counsel's efforts, and it is appropriate that Plaintiffs' counsel be compensated for performing these services. Thus, this Court approves Plaintiffs' counsel's request to be paid $115,000 from the Gross Settlement Fund.

### F.     Settlement Administrator Compensation

As the Court-approved Settlement Administrator [DE 87], Simpluris has been and will be responsible, among other things, for: (a) printing, translating and mailing the Notice of Proposed Collective Action Settlement ("Class Notice"), Consent to Join Form, and Mailing Envelope (together, "Notice Packet") to Class Members; (b) conducting a National Change of Address

("NCOA") database search prior to mailing the Notice Packets to Class Members and performing a skip-trace search on any Notice Packet returned as undeliverable; (c) receiving and processing Consent to Join Forms and Notices of Objection; (d) sending reminder postcards to Class Members; (e) distributing the Individual Settlement Payments to all Class Members who submit timely and valid Consent to Join Forms ("Claimants") as provided in this settlement; and (f) performing any other duties necessary to carry out its responsibilities as set forth in the Settlement Agreement [Cita Decl. DE 91 ¶ 3]. The settlement provided for up to a maximum payment of $27,000 out of the Gross Settlement Fund for the performance of these duties. Simpluris seeks a total payment of $19,000 from the Gross Settlement Fund for performance of its duties as the Settlement Administrator. The parties agree that this amount is reasonable and is substantially below the $27,000 that had been allocated. The Court agrees and approves of Simpluris receiving a total payment of $19,000 from the Gross Settlement Fund for its services performed.

**V.      CONCLUSION**

The Court has conducted a thorough, conscientious, and independent review of the entire record in this case. A fairness hearing has been held. For all the reasons stated above, the Court finds the Settlement Agreement to be fair, reasonable, and adequate. Thus, the Court **ORDERS** as follows:

1. Plaintiffs' Unopposed Motion for Final Certification Pursuant to § 216(b) of the FLSA, Approval of the Parties' Settlement Agreement, and Dismissal of the Collective Action with Prejudice Reserving Jurisdiction to Enforce the Terms of Settlement [DE 89] is **GRANTED.** The settlement of Plaintiffs' FLSA claims is **APPROVED** as fair, adequate, and reasonable.

2. This case is finally certified as a collective action pursuant to § 216(b) of the FLSA consisting of those School Bus Drivers who were employed by Defendant and received

an attendance incentive payment ("Merit Payment") anytime between May 18, 2016 to January 24, 2019 (the "Relevant Time Period"), worked overtime during the period preceding the Merit Payment during which the Merit Payment was earned, and opted into this case.

3. The Effective Date of the Settlement shall be thirty-five (35) days after the date of this Order, if no appeal is taken. If an appeal is taken from this Order, then the effective date of final approval shall be ten (10) days after the appeal is withdrawn or after an appellate decision affirming this Order becomes final.

4. The **628** individuals identified on the Settlement Administrator's chart attached as Exhibit D to the Declaration of Cassandra Cita [DE 91-1 at 17-23] are Qualified Claimants entitled to receive Settlement Payment Checks.

5. Within ten (10) days of the Effective Date of the Settlement, the Settlement Administrator shall mail checks for **$1,500.00** as Service Payments to the five Named Plaintiffs, and Settlement Payment Checks to all Qualified Claimants.

6. Within 14 days after a request is received by the Settlement Administrator, Defendant shall pay the employer's share of payroll taxes for the back pay portions of the payments made to Qualified Claimants.

7. The Qualified Claimants will have one hundred and twenty (120) calendar days after Settlement Payment Checks are mailed (the "Check Issuance Date") to cash or deposit the checks. If any Qualified Claimant does not cash or deposit the Settlement Payment Check within 120 days from the Check Issuance Date, the Settlement Payment Check will be null and void. However, if any Settlement Payment Check is returned to the Settlement Administrator as undeliverable to a Qualified Claimant within the one hundred and twenty

(120) calendar days following the mailing date of the initial distribution to Qualified Claimants, the Settlement Administrator shall promptly attempt to locate such Qualified Claimant using electronic searches, and shall promptly re-mail the check to such person if possible. If, within the one hundred and twenty (120) calendar days following the initial mailing of the Settlement Payment Checks, a Qualified Claimant informs the Settlement Administrator or Plaintiffs' Counsel that the Qualified Claimant has not received the Settlement Payment Check, the Settlement Administrator shall confirm the Settlement Payment Check has not been cashed or deposited and, following such confirmation, shall void the initial Settlement Payment Check, issue a replacement Settlement Payment Check, and mail the replacement Settlement Payment Check to the address provided by the Qualified Claimant.

8. Within ten (10) days of the Effective Date of the Settlement, the Settlement Administrator shall wire **$115,000.00** to Plaintiffs' Counsel as payment for Plaintiffs' attorneys' fees and costs.

9. Within ten (10) days of the Effective Date of the Settlement, Simpluris shall be paid **$19,000.00** for serving as the Settlement Administrator in this case.

10. Within ten (10) days of the payment of the Settlement Payment Checks, service payments, payments to the Settlement Administrator, and attorneys' fees and costs, the amounts allocated to Potential Opt-In Plaintiffs who did not timely file Consent to Join Forms from the Gross Settlement Fund shall be wired to Defendant.

11. On the 130th calendar day following the date of disbursement of the payments of the Settlement Payment Checks, Service Payment Checks, attorneys' fees and costs, and

Settlement Administrator expenses, any amounts remaining in the Qualified Settlement Fund shall be returned to the Defendant via wire transfer.

12. Pursuant to the terms of the Settlement Agreement, all Named Plaintiffs and Opt-In Plaintiffs unconditionally and irrevocably release, acquit, satisfy and forever discharge the School District of Palm Beach County, its officers, directors, employees, successors, and assigns, the Superintendent, and the members of the School Board of Palm Beach County in both their official capacities and as individuals (hereinafter referred to as " Defendant Releasees") from any and all claims that could have been brought in this case under the Fair Labor Standards Act that the Qualified Claimant Releasors now have, or hereafter can or may have against the Defendant Releasees from the beginning of the world until January 24, 2019, whether known or unknown, both legal and equitable arising out of, or related to Qualified Claimant's employment with Defendant ("Released Claims").

13. This Court **RETAINS JURISDICTION** for the limited purpose of enforcing the terms of this Order.

14. This case is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall **CLOSE THIS CASE**.

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 14th day of May, 2019.

*[signature]*
DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE